592 F.2d 283
 Terry Lee GULLY and Billy Ray Gully, Petitioners-Appellants,
v.
George H. KUNZMAN, Judge, Jefferson Circuit Court, and
Donald E. Bordenkircher, Superintendent Kentucky
State Penitentiary, Respondents-Appellees.
 No. 78-3605.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 15, 1978.
Decided Jan. 18, 1979.
 
 Richard L. Receveur, Asst. Public Defender, Louisville, Ky., for Terry Lee Gully.
 Kenneth L. Sales, Louisville, Ky., for Billy Ray Gully.
 Robert F. Stephens, Atty. Gen. of Ky., C. David Clauss, Asst. Atty. Gen., Frankfort, Ky., for respondents-appellees.
 Before LIVELY and MERRITT, Circuit Judges, and TAYLOR,* District Judge.
 MERRITT, Circuit Judge.
 
 
 1
 Petitioners, Terry Lee Gully and Billy Ray Gully, are in state custody in Kentucky awaiting a retrial for murder and other crimes after their earlier convictions were reversed on appeal. The State did not seek the death penalty at the first trial, but the trial court has now ruled that petitioners may be subjected on retrial to the provisions of Kentucky's recently enacted death penalty statute. The question in this case is whether petitioners are entitled to "pre-trial" habeas corpus relief on the ground that their retrial subject to the risk of receiving the death penalty upon conviction will offend principles of due process and double jeopardy.
 
 
 2
 The District Court thought all of the Gullys' claims premature and denied their petition summarily. We agree with the District Court's refusal to rule upon the due process claims, but, unlike the District Court, we have reached the merits of the double jeopardy claims. We affirm the order denying habeas corpus relief because, after careful consideration, we have concluded that there is no double jeopardy bar to petitioners' reprosecution under the new death penalty statute.
 
 I.
 
 3
 In September 1975, the Gully brothers were each charged with one count of armed robbery, Ky.Rev.Stat. § 433.140 (1970), willful murder, Ky.Rev.Stat. § 435.010 (1970), and malicious shooting without wounding, Ky.Rev.Stat. § 435.170 (1970).[1] The crimes were allegedly committed during a grocery store hold-up in December 1974. After a jury trial in the Circuit Court of Jefferson County, Kentucky, the Gullys were convicted on all charges and were sentenced to concurrent terms of life imprisonment on the murder and armed robbery counts and to a term of twenty-one years' imprisonment on the malicious shooting count. The convictions were ultimately reversed by the Kentucky Supreme Court for trial errors unrelated to the sufficiency of the evidence. The State plans to retry the Gullys for the same offenses on January 23, 1979.
 
 
 4
 This sequence of events raises serious questions about the propriety of the State's plans to reprosecute the Gullys when considered against the backdrop of evolving Supreme Court doctrine concerning the constitutionality of the death penalty and the series of changes in Kentucky law prompted thereby.
 
 
 5
 The murder and armed robbery statutes the Gullys are charged with violating provide simply that the offenses described are punishable, Inter alia, "by death." When the crimes were committed in December 1974, however, death was not available as a punishment for these offenses, because the Kentucky Supreme Court had determined in 1973[2] that the procedure for imposing the death penalty in Kentucky was inconsistent with the United States Supreme Court's opinion in Furman v. Georgia,[3] and the state legislature had yet to make any change in the law.
 
 
 6
 By the time the Gullys were first tried in February 1976, the legislature had acted. On January 1, 1975, Kentucky got a new comprehensive penal code, and, among its provisions was a so-called "mandatory" death penalty statute.[4] Under that statute, a death sentence automatically followed conviction for certain crimes tried as "capital" offenses at the election of the prosecution. The new penal code limits its application to offenses committed after 1974.[5] The prosecution did not seek to use the mandatory death penalty statute in the Gullys' first trial, and, as we have already noted, they were sentenced to life imprisonment.
 
 
 7
 In July 1976, the United States Supreme Court ruled unconstitutional mandatory death penalty statutes of the sort contained in the new Kentucky Penal Code.[6] By amendment to the new criminal code, the Kentucky legislature, in response, changed the law again, this time enacting a so-called "controlled discretion" death penalty statute.[7] Under this law, the sentencing authority is Required to consider the death penalty as one of a range of sentencing options for defendants convicted of crimes designated elsewhere in the code as "capital" offenses. The sentencing decision is made after the trial on the issue of criminal liability at a second "bifurcated" hearing at which the sentencing authority must take evidence concerning the presence or absence of any of a number of mitigating and aggravating factors listed in the statute as well as any other circumstances in mitigation or aggravation of the offense. The sentencing authority may not impose the death penalty except upon a finding, "beyond a reasonable doubt," of at least one of the statutorily prescribed aggravating factors. Under no circumstances is a death sentence required.
 
 
 8
 After the convictions obtained at the first trial were reversed on appeal, the State made immediate plans to retry the Gullys for the same crimes. Despite the express provision of the new code limiting its application to crimes committed after 1974, and despite the fact that the amended death penalty provision was not adopted until 1976, and in contrast to State's conduct of the first trial, when it did not seek to use the mandatory death penalty statute then on the books, the State this time sought from the trial court a ruling that the sentencing procedures of the new penal code, including the new "controlled discretion" death penalty law, were applicable to the pending prosecution. The trial court obliged, and it is this ruling that the Gullys have challenged in their habeas corpus petition.
 
 
 9
 Petitioners raise several objections to the trial court's ruling, any one of which, they claim, is sufficient to bar their retrial under the new death penalty statute. They argue that application of the new statute to them will deny them due process and violate the constitutional prohibition against ex post facto laws because, at the time they allegedly committed the crimes, the death penalty could not be imposed in Kentucky and they, therefore, could not have been on notice that their criminal acts were punishable by death. Alternatively, they contend that the State decided to use the new death penalty statute at their retrial in order to punish them for having prosecuted a successful appeal of their earlier convictions and life sentences and that such a vindictively motivated prosecution will deny them due process. They further charge that application of the new death penalty statute to them will deny them equal protection of the laws.
 
 
 10
 Petitioners have also argued that their retrial subject to the death penalty will violate the double jeopardy clause of the fifth amendment, enforceable against the State under the fourteenth. And, in a claim unrelated to the others, petitioner Terry Lee Gully argues that the State is barred by double jeopardy from retrying him because his earlier convictions were reversed "as a result of prosecutorial misconduct designed to create a mistrial or reversible error."
 
 II.
 
 11
 The first question to be resolved is whether petitioners are entitled to have any of these claims considered on federal habeas corpus In advance of the retrial. The District Court answered in the negative because "all of the issues and questions presented may be raised in state court and to grant the Petition at this time would be premature." We agree for the most part but think petitioners are entitled to a federal forum for their double jeopardy claims.
 
 
 12
 Although it has long been established that there is Power in the federal courts to consider on habeas corpus the merits of a constitutional defense to a state criminal charge in advance of a final judgment of conviction, Ex parte Royall, 117 U.S. 241, 253, 6 S.Ct. 734, 29 L.Ed. 868 (1886), considerations of federalism counsel strongly against exercising the power except in the most extraordinary circumstances. Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 489-91, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973). Before we may intervene, we must find under the federal habeas corpus statute that the applicant has exhausted state remedies, or that there is "an absence of available State corrective process," or "circumstances rendering such process ineffective." 28 U.S.C. § 2254(b) (1976).
 
 
 13
 Our only disagreement with the District Court is that we think double jeopardy claims, by their very nature, do involve exceptional circumstances warranting an exercise of the power despite the attendant risk of interfering with pending state proceedings. One who sets up a defense under the double jeopardy clause to a pending criminal prosecution is asserting a constitutional immunity from having to undergo "the risk or hazard of trial and conviction" and does not seek merely to avoid "the ultimate legal consequences of (an adverse) verdict." Price v. Georgia, 398 U.S. 323, 331, 90 S.Ct. 1757, 1762, 26 L.Ed.2d 300 (1970). The "prohibition is not against being twice punished, but against being twice put in jeopardy." Ball v. United States, 163 U.S. 662, 669, 16 S.Ct. 1192, 1194, 11 L.Ed. 300 (1896). "There is a wide difference between a verdict given and the jeopardy of a verdict," because the "hazard, peril, danger, jeopardy of a verdict cannot mean a verdict given." Commonwealth v. Cook, 6 S&R 577, 596 (Pa.1822). Thus, "if a criminal defendant is to avoid Exposure to double jeopardy and thereby enjoy the full protection of the Clause, his double jeopardy challenge . . . must be reviewable before that subsequent exposure occurs." Abney v. United States,431 U.S. 651, 662, 97 S.Ct. 2034, 2042, 52 L.Ed.2d 651 (1977).
 
 
 14
 Of course, a federal court should not entertain double jeopardy claims on pre-trial habeas corpus unless the defendant has exhausted whatever procedures are available to him under state law for "pre-exposure" vindication of his rights. But, in this case, that requirement has been fully satisfied. The double jeopardy claims were raised, and rejected, in the trial court. Although under Kentucky law there is no right of interlocutory appeal from such rulings, Slone v. Commonwealth, 303 Ky. 146, 197 S.W.2d 54 (1946), the Gullys nonetheless attempted to obtain pre-trial appellate review by applying to the Kentucky Supreme Court for a writ of mandamus or order of prohibition. That Court denied the application without reaching the merits on the ground that the Gullys' right of post-conviction appeal provided an adequate remedy. Thus, the only option in the state system left for the Gullys was to submit to the very trial they assert the double jeopardy clause prohibits and press their claims on appeal from a final judgment of conviction. Federal adjudication of double jeopardy claims on pre-trial habeas corpus has uniformly been approved in these circumstances. Rivers v. Lucas, 477 F.2d 199, 202-03 (6th Cir.), Vacated and remanded on other grounds, 414 U.S. 896, 94 S.Ct. 232, 38 L.Ed.2d 139 (1973).[8]
 
 
 15
 The same cannot be said for petitioners' claims under the due process, ex post facto, and equal protection clauses of the Constitution. These provisions insure notice, regularity and impartiality in connection with trials and the similar treatment of similar cases. None, however, involves the "right not to be tried" which lies at the heart of the double jeopardy guarantee.[9] The gist of all of these claims is that it would be unfair to impose a death sentence upon the Gullys if they are reconvicted. But petitioners might not be reconvicted; and, as we have already explained, there is no assurance that they will receive a death sentence even if they are, for the new Kentucky death penalty statute, if applied to these offenses, is discretionary, not mandatory. Moreover, in the event the prosecutor succeeds in obtaining a sentence of death, the alleged unfairness of this result may be reliably assessed, and eliminated, after the trial on direct appeal in the state court system. As petitioners should already know from their experience after the first trial, their claims will doubtless receive careful scrutiny from Kentucky's appellate courts. After exhaustion of remedies in the state courts, post-conviction habeas corpus remedies are available in the federal courts.
 
 
 16
 For all of these reasons, federal intervention at this juncture to resolve the claims not involving double jeopardy would be premature. There is no reason to grant petitioners anticipatory access to the federal courts and a preliminary injunction against evils which may never befall them. And, should their fears become realities, petitioners have trial and appellate remedies in the state system which federal courts historically have characterized as "adequate." Under these circumstances, a due respect for the institutional integrity of the state judicial system requires that we decline to adjudicate these claims at this time.[10]
 
 III.
 
 17
 We would ordinarily remand the case to the District Court for a ruling on the merits of petitioners' double jeopardy claims, but in this instance we think it best to dispose of the claims ourselves. All of the facts necessary for a fair appraisal of the claims are before us, and there is thus no need for additional factfinding below. More importantly, petitioners' second trial is imminent. Nothing would be accomplished by a remand, except further delay and unjustified disruption of the state criminal process. Accordingly, we turn to the merits.
 
 
 18
 Retrial after reversal does not itself offend the double jeopardy clause. Since petitioners' earlier convictions were reversed on grounds unrelated to the sufficiency of the evidence, the State's right to retry them for the same offenses is clear. Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).
 
 
 19
 The claim is rather that double jeopardy bars their being subjected to the risk of a death sentence at a second trial, since they were sentenced only to life imprisonment after the first.
 
 
 20
 Although the concurring opinions of Justices Harlan and Douglas in North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), on the meaning of the double jeopardy clause strongly support this claim, the Supreme Court has rejected it. In Pearce, Justice Harlan asked:
 
 
 21
 If, as a matter of policy and practicality, the imposition of an increased sentence on retrial has the same consequences whether effected in the guise of an increase in the degree of offense or an augmentation of punishment, what other factors render one route forbidden and the other permissible under the Double Jeopardy Clause?
 
 
 22
 and then answered the question:
 
 
 23
 It cannot be that the provision does not comprehend "sentences" as distinguished from "offenses" for it has long been established that once a prisoner commences service of sentence, the clause prevents a court from vacating the sentence and then imposing a greater one . . . .
 
 
 24
 The Court does not suggest otherwise, but in its view, apparently, when the conviction itself and not merely the consequent sentence has been set aside, or when either has been set aside at the defendant's behest, the "slate has been wiped clean" . . . and the Double Jeopardy Clause presents no bar to the imposition of a sentence greater than that originally imposed.
 
 
 25
 395 U.S. at 746-48, 89 S.Ct. at 2086-2087.
 
 
 26
 Justice Harlan recognized that the Court in Pearce read Stroud v. United States, 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103 (1919), as foreclosing his argument. The Court reaffirmed its reading of Stroud more recently in Chaffin v. Stynchcombe, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973).
 
 
 27
 In Stroud, the defendant was convicted of first-degree murder and was sentenced to life imprisonment. After the conviction was reversed on appeal, he was retried for the same offense and was sentenced to death. The Court sustained the death sentence against a claim that the more severe punishment after retrial violated the double jeopardy clause.
 
 
 28
 The only distinction we can divine between this case and Stroud is that here petitioners were not exposed to the risk of a death sentence at the first trial since the prosecutor did not seek one, whereas the defendant in Stroud could have been sentenced to death at his first trial but was not. We do not see how this distinction makes any difference for double jeopardy purposes in view of the proposition proceeding directly from Stroud that "the guarantee against double jeopardy imposes no restrictions upon the length of a sentence imposed upon reconviction." North Carolina v. Pearce, 395 U.S. at 719, 89 S.Ct. at 2077. While an objection to the sequence of events in this case might lie under some other constitutional provision a matter upon which we must decline to rule at this time we do not think the double jeopardy clause, of its own force, prohibits the exposure of petitioners to the risk of the death penalty on retrial.
 
 
 29
 We have also considered the possibility that, by virtue of their exposure to the new death penalty statute, petitioners are not simply being retried for the same "offenses" but are, in effect, being tried for greater inclusive "capital offenses" of the crimes of willful murder and armed robbery with which they were charged at the first trial. We do not think this analysis farfetched, since, under the new scheme, a defendant convicted of a capital offense may not be sentenced to death except upon a finding, "beyond a reasonable doubt," of certain statutorily-prescribed "aggravating factors." These "factors" might be conceived of as elements of the "greater" crimes of " capital murder/armed robbery" rather than simply as guides for the exercise of the sentencing authority's discretion to fix an appropriate punishment for one convicted of "simple" willful murder and armed robbery.
 
 
 30
 But, even taking this view, we can find no double jeopardy bar to petitioners' retrial. The new death penalty statute was not employed at petitioners' first trial. Indeed, the option of sentencing petitioners to death was not even submitted to the sentencing authority at the first trial. Accordingly, the fact that petitioners received only a life sentence after the first trial cannot be interpreted as "an implicit acquittal" of the "greater" offense created by the new death penalty law. See Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957).
 
 
 31
 From what we have already said, it should be clear that petitioner Terry Lee Gully's separate double jeopardy claim is likewise without merit. He argues that the State should be barred from retrying him because its own misconduct led to the reversal of his first conviction. Even accepting that characterization of the trial error which caused the appellate reversal, it would not affect the State's right to retry him. See Burks v. United States, supra. His attempt to analogize his situation to cases where retrial has followed a mistrial provoked by prosecutorial misconduct is unavailing. In such cases, retrial is disapproved principally because the misconduct resulting in a mistrial has deprived the defendant of "(the) valued right to have his trial completed by a particular tribunal." Wade v. Hunter, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949). See also United States v. Jorn, 400 U.S. 470, 483-85, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971) (plurality opinion of Harlan, J.). Terry Lee Gully's first trial proceeded all the way to verdict, and, consequently, he fully enjoyed that right.
 
 
 32
 The order of the District Court denying the petition for a writ of habeas corpus is affirmed.
 
 
 
 *
 The Honorable Robert L. Taylor, Judge, United States District Court for the Eastern District of Tennessee, sitting by designation
 
 
 [1]
 These statutes were repealed with the enactment of a new comprehensive penal code in January 1975
 
 
 [2]
 Caine v. Commonwealth, 491 S.W.2d 824, 831-32 (1973)
 
 
 [3]
 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972)
 
 
 [4]
 Ky.Rev.Stat. § 532.030 (amended 1976)
 
 
 [5]
 Ky.Rev.Stat. § 500.040
 
 
 [6]
 Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)
 
 
 [7]
 Ky.Rev.Stat. §§ 532.025, 532.030, 532.035
 
 
 [8]
 Accord, United States ex rel. Russo v. Superior Court of N. J., 483 F.2d 7 (3d Cir.), Cert. denied, 414 U.S. 1023, 94 S.Ct. 447, 38 L.Ed.2d 315 (1973); United States ex rel. Webb v. Court of Common Pleas, 516 F.2d 1034 (3d Cir. 1975); Fain v. Duff, 488 F.2d 218 (5th Cir. 1973), Cert. denied, 421 U.S. 999, 95 S.Ct. 2396, 44 L.Ed.2d 666 (1975); Burris v. Ryan, 397 F.2d 553 (7th Cir. 1968)
 
 
 [9]
 Some due process claims based on the elusive concept of prosecutorial vindictiveness do aim "to prevent a trial from taking place at all, rather than to prescribe procedural rules that govern the conduct of (the) trial." Blackledge v. Perry, 417 U.S. 21, 31, 94 S.Ct. 2098, 2104, 40 L.Ed.2d 628 (1974), quoting Robinson v. Neil, 409 U.S. 505, 509, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973). We express no view as to whether federal pretrial habeas corpus lies to consider such a claim. Plainly, petitioners' vindictiveness claim cannot be so characterized. They do not argue that due process bars a retrial after an appellate reversal "from taking place at all," nor could they successfully. Rather, their claim attacks the prosecutor's evident desire to have them sentenced to death after a second conviction and the fairness of that result should it occur. Compare the vindictiveness claim involved in Blackledge v. Perry, supra, and the court's discussion of it, 417 U.S. at p. 31 n. 8, 94 S.Ct. 2098 of the majority opinion in that case
 
 
 [10]
 See Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and our discussion of this point in Flynt v. Leis, 574 F.2d 874 (6th Cir. 1978), Rev'd on other grounds, --- U.S. ----, 99 S.Ct. 698, 58 L.Ed.2d 717 (1979). See also Moore v. DeYoung, 515 F.2d 437 (3d Cir. 1975); Whitten, Federal Declaratory and Injunctive Interference with State Court Proceedings: The Supreme Court and the Limits of Judicial Discretion, 53 N.Car.L.Rev. 581 (1975); L. Tribe, American Constitutional Law 147-56 (1978)