**Dennis G. KRALL, Plaintiff,**

v.

**COMMONWEALTH OF PENNSYLVANIA, Defendant.**

**Civ. A. No. 95–6732.**

United States District Court, E.D. Pennsylvania.

Nov. 1, 1995.

---

Martin J. King, Cordes, King & Assoc., New Hope, PA, for Plaintiff.

Carl Vaccaro, Asst. Counsel in Charge, King of Prussia, PA, Sandra W. Stoner, Deputy Attorney General, Harrisburg, PA, for Defendant.

## MEMORANDUM AND ORDER

KATZ, District Judge.

**AND NOW,** this 1st day of November, 1995, upon consideration of plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction, and the defendant's response thereto, and after a hearing, it is hereby **ORDERED** that the said Motion is **DENIED.**

■ A petitioner seeking injunctive relief must demonstrate both a likelihood of success on the merits and a probability of irreparable harm. *Bradley v. Pittsburgh Bd. of Educ.,* 910 F.2d 1172, 1175 (3d Cir.1990). Additionally, the public interest must be considered. *Id.*

### Background

On February 13, 1995, Krall was convicted of the criminal offense of driving while under the influence in violation of 75 Pa.C.S.A. § 3731. After his driver's license was suspended for a year on March 23, 1995, the Court of Common Pleas of Bucks County upheld the suspension. Krall appealed to the Commonwealth Court where his case is pending. He filed this action claiming double jeopardy, an issue he has also raised in the state courts. The suspension of his driver's license is effective tomorrow.

### Likelihood of Success on the Merits

#### Res Judicata and Collateral Estoppel

■ The doctrine of res judicata provides that "a final judgment on the merits of an action precludes the parties from relitigating issues that were or could have been raised in that action." *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 467 n. 6, 102 S.Ct. 1883, 1889 n. 6, 72 L.Ed.2d 262 (1982)

(citation omitted); *see also* 28 U.S.C. § 1738 (requiring federal courts to give the same preclusive effect to a state court judgment that the judgment would have in state court); *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984) (same). The related doctrine of collateral estoppel bars relitigation of issues that were actually litigated in the prior proceeding. *Gregory v. Chehi,* 843 F.2d 111, 116 (3d Cir.1988). Preclusion principles apply in civil rights cases as they apply in other civil actions. *Allen v. McCurry,* 449 U.S. 90, 104, 101 S.Ct. 411, 418, 66 L.Ed.2d 308 (1980).

■ Collateral estoppel applies where (1) the issue presented in the later action is identical to the one presented in the prior adjudication, (2) there was a final judgment on the merits, (3) the party against whom the preclusion is asserted was a party or is in privity with a party to the prior adjudication, and (4) the party against whom preclusion is asserted has had a full and fair opportunity to litigate the issue in question in the prior action. *Gregory,* 843 F.2d at 121 (citing *Safeguard Mut. Ins. v. Williams,* 463 Pa. 567, 345 A.2d 664, 668 (1975)). Moreover, res judicata applies where the two actions share an identity of (1) the thing sued on, (2) the cause of action, (3) persons and parties to the action, and (4) quality or capacity of the parties suing or sued. *Id.* at 116 (citing *Duquesne Slag Prods. Co. v. Lench,* 490 Pa. 102, 415 A.2d 53, 56 (1974)). A Pennsylvania judgment is considered final for the purpose of claim or issue preclusion unless or until it is reversed. *O'Hara Sanitation v. Commonwealth,* 125 Pa.Cmwlth. 441, 557 A.2d 453, 455 (1989).

■ Under the above criteria, Krall cannot demonstrate a reasonable likelihood of success on the merits. Krall filed an appeal of his license suspension in the Court of Common Pleas of Bucks County and explicitly raised the double jeopardy claim. *See* plaintiff's Memorandum of Law in Support of Plaintiff's Motion Under F.R.C.P. 65 at 2–3. The Court of Common Pleas conducted a hearing and received evidence from both parties. The parties then briefed, inter alia, the double jeopardy issue. On August 8, 1995,

the Court of Common Pleas entered an order denying plaintiff's appeal. The court also explicitly rejected the plaintiff's double jeopardy argument in its opinion. Thus, that order constitutes a final judgment on the merits in a proceeding in which the plaintiff had a full and fair opportunity to litigate the double jeopardy issue and the resolution of the issue was necessary for the entry of final judgment.

### Younger Abstention

 Plaintiff has not demonstrated that there is a likelihood of success on the merits as *Younger* dictates that this court must abstain in this case. *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). *Younger* is applicable when 1) there are ongoing state proceedings involving the federal plaintiff that are judicial in nature, 2) the state proceedings implicate important state interests, and 3) the state proceedings afford adequate opportunity to raise the federal claims. *Acierno v. New Castle County*, 40 F.3d 645, 655 n. 13 (3d Cir.1994).

The first *Younger* requirement is satisfied. The secretary of transportation's suspension of the plaintiff's license and the state court appeals are "judicial in nature" as the suspension stands on present or past facts rather than being legislative and creating a new rule to be applied thereafter to all. *See New Orleans Public Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 370–71, 109 S.Ct. 2506, 2519–20, 105 L.Ed.2d 298 (1989) (citation omitted).

Moreover, the proceedings are ongoing as the plaintiff has not exhausted all of his state remedies. The Supreme Court has held that "a party ... must exhaust his state appellate remedies before seeking relief in the District Court." *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 608, 95 S.Ct. 1200, 1210, 43 L.Ed.2d 482 (1975). While *Huffman* involved the appeal from a state court decision, the Supreme Court has suggested that *Huffman* applies to state administrative-judicial proceedings. *See American Institute of Foot Med. v. New Jersey Board of Med. Examiners*, 807 F.Supp. 1170, 1175 (D.N.J.1992).

The second and third requirements for *Younger* abstention are also satisfied. The state license suspension proceedings implicate important state interests. *Mackey v. Montrym*, 443 U.S. 1, 17–18, 99 S.Ct. 2612, 2620–2621, 61 L.Ed.2d 321 (1979) (recognizing that states have a compelling state interest in protecting their citizens from the dangers posed by drunk drivers); *Commonwealth v. Kohl*, 532 Pa. 152, 615 A.2d 308, 316 (1992) (same). Krall has also had the opportunity, and indeed has raised, his double jeopardy claim.[1]

 Finally, no "extraordinary circumstances" are present.

"Only if 'extraordinary circumstances' render the state court incapable of fairly and fully adjudicating the federal issues before it, can there be any relaxation of the deference to be accorded to the state criminal process.... [S]uch circumstances must be 'extraordinary' in the sense of creating an extraordinarily pressing need for immediate federal equitable relief, not merely the sense of presenting a highly unusual factual situation."

*Moore v. Sims*, 442 U.S. 415, 433, 99 S.Ct. 2371, 2382, 60 L.Ed.2d 994 (1979) (quoting *Kugler v. Helfant*, 421 U.S. 117, 124–25, 95 S.Ct. 1524, 1530–31, 44 L.Ed.2d 15 (1975)). "This exception is intended to be applied with careful scrutiny and only to the extraordinary case." *Ford Motor Co. v. Ins. Comm'r*, 874 F.2d 926, 935 (3d Cir.), *cert. denied sub nom. United States Auto Ass'n v. Foster*, 493 U.S. 969, 110 S.Ct. 418, 107 L.Ed.2d 382 (1989).

In support of his contention that his is an extraordinary case, the plaintiff points to cases that have held that double jeopardy claims present extraordinary circumstances.[2]

---

1. State courts, no less than federal courts, have the obligation and capability to enforce federal law. *McCurry*, 449 U.S. at 105, 101 S.Ct. at 420, 66 L.Ed.2d 308 (1980).

2. *See Satter v. Leapley*, 977 F.2d 1259 (8th Cir. 1992); *Mannes v. Gillespie*, 967 F.2d 1310 (9th Cir.1992), *cert. denied*, ── U.S. ──, 113 S.Ct. 964, 122 L.Ed.2d 121 (1993); *Showery v. Samaniego*, 814 F.2d 200 (5th Cir.1987); *Davis v. Herring*, 800 F.2d 513 (5th Cir.1986); *Doe v. Donovan*, 747 F.2d 42 (1st Cir.1984); *Drayton v. Hayes*, 589 F.2d 117 (2d Cir.1979); *Gully v. Kunzman*, 592 F.2d 283 (6th Cir.), *cert. denied*

However, these cases are distinguishable for two reasons. First, most of the cases deal with multiple *prosecutions* not multiple *punishments*. The soundness of drawing a distinction between multiple punishments and multiple prosecutions is apparent: if an accused is facing multiple convictions (and, therefore, multiple punishments) in violation of the Double Jeopardy Clause, he may appeal those convictions to obtain full relief. If, by contrast, he faces multiple prosecutions, neither the second (or third, or fourth) trial itself nor an appeal therefrom can provide him with a remedy; the trial itself is a constitutional wrong, above and beyond any possible punishment. Thus, in weighing the potential harm to a defendant claiming protection of the Double Jeopardy Clause against the potential harm to the integrity of the state criminal process, as *Younger* requires, the bare fact that the plaintiff has made out a double jeopardy claim is not enough to justify an injunction. Additionally, the plaintiff cannot make out a colorable claim for double jeopardy as required by some of the cases.

*Double Jeopardy*

■■■ "The Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." *United States v. Halper,* 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989) (citation omitted). Here, the plaintiff attempts to avail himself of the Clause's third protection.

■■■ Before determining whether a license suspension and a subsequent criminal prosecution represent multiple punishments, the court must first find that the suspensions and subsequent prosecutions relate to the same offense and constitute separate proceedings. Pennsylvania law generally holds that a license suspension proceeding is a civil proceeding separate and distinct from criminal or summary proceedings. *Commonwealth v. Wolf,* 534 Pa. 283, 632 A.2d 864, 867 (1993); *Patterson v. Commonwealth,* 136 Pa. Cmwlth. 49, 582 A.2d 700, 701 (1990), *appeal denied* 528 Pa. 615, 596 A.2d 161 (1991); *see also Department of Revenue v. Kurth Ranch,* — U.S. —, — & n. 21, 114 S.Ct. 1937, 1947 & n. 21, 128 L.Ed.2d 767 (1994) The civil penalty "is exacted only after the ... arrest[ ] for the precise conduct the gives rise to the [penalty] in the first place." These proceedings "involve[ ] separate sanctions imposed in successive proceedings.").

■■■ Having found that the license suspensions and the subsequent prosecutions constitute separate proceedings arising from the same conduct, the court next determines whether the temporary revocation of a driver's license constitutes punishment. In *Halper,* the court held that a criminal defendant may not be prosecuted and "subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution." 490 U.S. at 449, 109 S.Ct. at 1902. Whether the defendant perceives the civil sanction as punishment is not the relevant query because "for the defendant even remedial sanctions carry the sting of punishment." *Id.* at 447 n. 7, 109 S.Ct. at 1901 n. 7 (citation omitted).[3] Rather, "in determining whether a particular civil sanction constitutes criminal punishment, it is the purposes actually served by the sanction in question, not the underlying nature of the proceeding giving rise to the sanction that must be evaluated." *Id.* Here, the purpose of the suspension is to protect the public rather than to punish the licensee. *See Drogowski v. Commonwealth,* 94 Pa.Cmwlth. 205, 503 A.2d 104, 107 (1986), *appeal denied,* 516 Pa. 619, 531 A.2d 1120 (1987); *Zanotto v. Department of Trans.,* 83 Pa.Cmwlth. 69, 475 A.2d 1375, 1375 (1984). Any deterrent or punitive effect that results from the statute's enforcement is purely incidental to the overriding purpose of

---

442 U.S. 924, 99 S.Ct. 2850, 61 L.Ed.2d 292 (1979); *Murphy v. Commonwealth of Va.,* 896 F.Supp. 577 (E.D.Va.1995).

**3.** Moreover, the use of the term, "sanction," in the statute is not dispositive. A sanction can be either punitive or remedial. *Austin v. United States,* — U.S. —, —, 113 S.Ct. 2801, 2806, 125 L.Ed.2d 488 (1993); *see also Halper,* 490 U.S. at 447, 109 S.Ct. at 1901 (labels "criminal" and "civil" are not particularly important in assessing whether a sanction is actually punishment).

protecting public safety. *See Bae v. Shalala,* 44 F.3d 489, 493 (7th Cir.1995) (determining, pursuant to *Halper,* that the punitive aspect of the debarment of a generic drug company president is "merely incidental to [the statute's] overriding purpose to safeguard the integrity of the generic drug industry while protecting the public health"). Operating a motor vehicle is a privilege, not a property right, and thus, Pennsylvania has the right to control and regulate its use. *Plowman v. Commonwealth,* 535 Pa. 314, 635 A.2d 124, 126 (1993). While the plaintiff may detect the "sting of punishment" in the suspension of his license, *Halper,* 490 U.S. at 447 n. 7, 109 S.Ct. at 1901 n. 7, the suspension does not constitute punishment for the purposes of analysis under the Double Jeopardy Clause.

### *Irreparable Harm and Public Interest*

On balance, the plaintiff has not satisfactorily demonstrated his inability to retain another person to drive him to work. In fact, the plaintiff has a grown son and has not explained why his son could not drive him to work. The public has a strong interest in suspending the driving privileges of persons convicted of drunk driving.