684 A.2d 642

**COMMONWEALTH of Pennsylvania**

v.

**Jeffrey L. WOLFE, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 11, 1996.

Filed Oct. 30, 1996.

Joseph P. Green, Jr., West Chester, for appellant.

Stuart B. Suss, Assistant District Attorney, West Chester, for Commonwealth, appellee.

Before KELLY, SAYLOR and MONTEMURO *, JJ.

SAYLOR, Judge:

This is an appeal from an order entered in the Court of Common Pleas of Chester County denying Appellant, Jeffrey Wolfe's, motion to dismiss charges brought against him for driving under the influence of alcohol ("DUI"), on the grounds that such prosecution is violative of his right to not be punished more than once for the same offense, where he has already been subject to the license suspension provisions of 75 Pa.C.S.A. § 1547(b)(1) for his refusal to submit to chemical testing. We affirm.

On April 9, 1995, Appellant's vehicle was stopped by the Tredyffrin Township police, who requested that Appellant perform a field sobriety test based upon their suspicion that Appellant was operating his vehicle while intoxicated. After failing the test, Appellant was arrested for driving under the influence of alcohol and was informed by the arresting officer that, pursuant to 75 Pa.C.S.A. § 1547(b), he could refuse to submit to chemical testing, but that if he did so, his driver's license would automatically be suspended for one year.[1] Ap-

---

* Retired Justice assigned to Superior Court.

1. Section 1547(a)(1) of the Motor Vehicle Code, 75 Pa.C.S.A. § 101 et seq., provides that any person who operates a vehicle in the Commonwealth is deemed to have consented to chemical testing of blood, breath or urine if a police officer has reasonable grounds to believe that the person has been operating a vehicle while under the influence of alcohol or other controlled substance.

pellant refused to take a breathalyzer or blood test. Consequently, Appellant's driver's license was suspended following an administrative hearing on October 26, 1995.

The Commonwealth subsequently filed criminal charges against Appellant for driving under the influence of alcohol in violation of 75 Pa.C.S.A. § 3731(a)(1).[2] Appellant filed a motion to dismiss the charge on the grounds that such charge violated the provisions against successive punishment contained in the double jeopardy clauses of both the state and federal constitutions. Following a hearing, the trial court denied Appellant's motion, and this appeal followed.[3]

Appellant's single contention on appeal is that suspension of his driver's license for refusal to submit to chemical testing constituted punishment, thereby barring any subsequent criminal prosecution for DUI as violative of the double jeopardy clauses of both the Fifth Amendment of the United States Constitution and Article I, Section 10 of the Pennsylvania Constitution.[4]

The United States Supreme Court has not addressed the issue of whether a driver's license suspension triggers double jeopardy protection and thus bars subsequent criminal prosecution for the same conduct. Appellant, however, contends

Section 1547(b) of the Motor Vehicle Code provides that if a person placed under arrest for DUI refuses to submit to chemical testing, the police must inform him that his driver's license will be suspended by the Department of Transportation for a period of 12 months. *See,* 75 Pa.C.S.A. § 1547(b)(1) and (2).

2. Section 3731(a)(1) of the Motor Vehicle Code provides that a person shall not drive, operate or be in actual physical control of the movement of any vehicle while under the influence of alcohol to a degree which renders the person incapable of safe driving.

3. It is well settled that a defendant is entitled to an immediate interlocutory appeal as of right from an order denying a non-frivolous motion to dismiss on state or federal double jeopardy grounds. *See, Commonwealth v. Brady,* 510 Pa. 336, 508 A.2d 286 (1986).

4. The Fifth Amendment of the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."

Article I, Section 10 of the Pennsylvania Constitution provides that "[n]o person shall, for the same offense, be twice put in jeopardy of life or limb...."

that under the test enunciated by the Supreme Court in *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), the civil sanction of license suspension constitutes "punishment" within the meaning of the double jeopardy clause, thereby barring any subsequent criminal prosecution for DUI.

In *Halper,* the Supreme Court considered "whether and under what circumstances a civil penalty may constitute 'punishment' for the purpose of double jeopardy analysis." *Id.,* 490 U.S. at 436, 109 S.Ct. at 1895. The defendant in *Halper* had been convicted of violating the criminal false claims statute, 18 U.S.C. § 287, and had been sentenced and fined. After sentencing, the government filed a separate action under the remedial provisions of the civil False Claims Act, 31 U.S.C. §§ 3729–3731, to recover a statutory penalty for each false claim. The Supreme Court held that because the civil sanction imposed by the Act sought to recover an amount far exceeding the actual monetary loss suffered by the government as a result of the defendant's false claims, the civil penalty was punitive in nature. Accordingly, the Court remanded the case to the trial court for a determination of what portion of the statutory penalty could be sustained as compensation for the government's actual damages.[5]

In making its determination, the Supreme Court stated:

5. The holding of *Halper* has recently been clarified by the Supreme Court in the companion cases of *United States v. Ursery* and *United States v. $405,089.23 in United States Currency,* —— U.S. ——, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996), wherein the Court held that civil forfeitures generally do not constitute "punishment" for purposes of the double jeopardy clause. In reaching this determination, the Supreme Court emphasized that its decision in *Halper* was limited to the context of civil penalties and was inapplicable to cases involving civil forfeiture proceedings, quoting the following language from *Halper:*

"What we announce now is a rule for the rare case, the case such as the one before us, where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused...."

*Ursery, supra,* —— U.S. at ——, 116 S.Ct. at 2144, quoting *Halper,* 490 U.S. at 449–450, 109 S.Ct. at 1902. *See also, Commonwealth v. Trayer,* 452 Pa.Super. 1, 680 A.2d 1166 (1996) (*Halper* court limited its holding to the circumstances before it and found that a civil sanction will be deemed punishment for double jeopardy purposes where the fine is not

... the labels "criminal" and "civil" are not of paramount importance. It is commonly understood that civil proceedings may advance punitive as well as remedial goals, and, conversely, that both punitive and remedial goals may be served by criminal penalties.... [T]he determination whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty imposed and the purposes that penalty may fairly be said to serve. Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goal of punishment. ... [P]unishment serves the twin aims of retribution and deterrence.... From these premises, it follows that a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term.

*Halper, supra,* 490 U.S. at 447–448, 109 S.Ct. at 1901–1902. The Court thus held that

under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution.

*Id.,* 490 U.S. at 448–449, 109 S.Ct. at 1902.

Although *Halper* is to be read narrowly, applying only to cases involving civil penalties in which "a court must compare the harm suffered by the [g]overnment against the size of the penalty imposed," *Ursery, supra,* ⸻ U.S. at ⸻, 116 S.Ct. at 2145, the principles employed in *Halper* concerning whether a particular sanction constitutes "punishment" are instructive in the present case.

Therefore, we must assess the purposes that the civil sanction of license suspension may fairly be said to serve. *See, Halper, supra.* Although Pennsylvania state courts have not

characterized as remedial and the dollar amount or value is disproportionate to the government's loss).

specifically addressed the applicability of double jeopardy principles in cases involving application of the license suspension provisions of 75 Pa.C.S.A. § 1547(b), the courts have generally held that the mandatory suspension of a motorist's license for refusal to submit to chemical testing is a separate administrative proceeding, independent from the imposition of any criminal penalties which may be imposed for DUI. *See, Commonwealth v. Shinn,* 368 Pa.Super. 436, 534 A.2d 515 (1987); *Pennsylvania Department of Transportation v. Abraham,* 7 Pa.Cmwlth. 535, 300 A.2d 831 (1973); *Pennsylvania Department of Transportation v. Yakubisin,* 9 Pa.Cmwlth. 383, 307 A.2d 475, about the purpose of such civil suspension proceedings, emphasizing that the primary purpose of these proceedings is the protection of the public and not the punishment of the drunken motorist.

In *Pennsylvania Department of Transportation v. Crawford,* 121 Pa.Cmwlth. 613, 550 A.2d 1053 (1988), the Commonwealth Court addressed the issue of whether the Department of Transportation could establish at a license suspension proceeding brought pursuant to 75 Pa.C.S.A. § 1547(b) that the motorist had refused to submit to chemical testing, although it had previously been determined with respect to criminal charges filed against the motorist that he did not refuse chemical testing. In holding that the Department was not collaterally estopped from doing so, the court noted:

It is well settled that a Department suspension proceeding for a refusal to take a breathalyzer test is an independent civil proceeding separate and distinct from any criminal charges brought against a motorist. *Hando v. Commonwealth,* 84 Pa.Commonwealth Ct. 63, 478 A.2d 932 (1984); *Wisniewski v. Commonwealth,* 73 Pa.Commonwealth Ct. 318, 457 A.2d 1334 (1983); *Commonwealth v. Clawson,* 9 Pa.Commonwealth Ct. 87, 305 A.2d 732 (1973); *Commonwealth v. Abraham,* 7 Pa.Commonwealth Ct. 535, 300 A.2d 831 (1973). *The civil proceeding to revoke or suspend a license is not intended as punishment; rather, it is designed to protect the public by deny-*

*ing intoxicated motorists the privilege of using the roadways. Hando; Abraham.*

*Crawford, supra,* 121 Pa.Cmwlth. at 614–16, 550 A.2d at 1054 (emphasis supplied).

In *Occhibone v. Pennsylvania Department of Transportation,* 542 Pa. 588, 669 A.2d 326 (1995), the Pennsylvania Supreme Court, in addressing the issue of whether a motorist charged with a violation of the Implied Consent Law must receive the request to submit to chemical testing from a police officer, stated that

> *The object of the Implied Consent Statute is to reduce the number of motorists driving under the influence, as the Commonwealth has a compelling interest in protecting its citizens from the dangers posed by drunk drivers. Mackey v. Montrym,* 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979); *Commonwealth v. Kohl,* 532 Pa. 152, 615 A.2d 308 (1992). The Implied Consent Law remains one of the Commonwealth's most effective tools against drunk driving, providing an effective means of quickly denying intoxicated motorists the use of the Commonwealth's highways. . . . It also helps facilitate the acquisition of chemical analyses and permits this information to be utilized in legal proceedings.

*Occhibone, supra,* 542 Pa. at 592–593, 669 A.2d at 328 (footnote omitted) (emphasis supplied).

We also note the federal trial court's decision in *Krall v. Commonwealth of Pennsylvania,* 903 F.Supp. 858 (E.D.Pa. 1995), where the issue before the court was identical to that in the present case: whether a license suspension and a subsequent criminal prosecution represent multiple punishments. Although not binding upon this court, the reasoning employed by the *Krall* court is persuasive:

> "in determining whether a particular civil sanction constitutes criminal punishment, it is the purposes actually served by the sanction in question, not the underlying nature of the proceeding giving rise to the sanction that must be evaluated." [*Halper,* 490 U.S. at 447 n. 7, 109 S.Ct. at 1901 n. 7] Here, the purpose of the suspension is to protect the public

rather than to punish the licensee. See *Drogowski v. Commonwealth,* 94 Pa.Cmwlth. 205, 503 A.2d 104, 107 (1986) appeal denied, 516 Pa. 619, 531 A.2d 1120 (1987); *Zanotto v. Department of Trans.,* 83 Pa.Cmwlth. 69, 475 A.2d 1375, 1375 (1984). Any deterrent or punitive effect that results from the statute's enforcement is purely incidental to the overriding purpose of protecting public safety. . . . Operating a motor vehicle is a privilege, not a property right, and thus, Pennsylvania has the right to control and regulate its use. *Plowman v. Commonwealth,* 535 Pa. 314, 635 A.2d 124, 126 (1993). While the [motorist] may detect the "sting of punishment" in the suspension of his license, *Halper,* 490 U.S. at 447 n. 7, 109 S.Ct. at 1901 n. 7, the suspension does not constitute punishment for purposes of analysis under the Double Jeopardy Clause.

*Krall, supra,* 903 F.Supp. at 862–863.[6]

Here, Appellant's license was suspended as a result of his refusal to submit to chemical testing. Pennsylvania courts have clearly held that the primary purpose of such suspensions is not to punish the individual but to protect the public. Furthermore, Pennsylvania case law has interpreted the holding of *Halper* to prohibit the imposition of a civil sanction, as violative of double jeopardy, "if the civil sanction can be characterized *only* as a deterrent or as punishment for the conduct in question. . . ." *Sweeny v. State Board of Funeral Directors,* 666 A.2d 1137, 1139 (Pa.Cmwlth.1995) (emphasis supplied). Thus, any incidental deterrent or punitive effect

**6.** Other jurisdictions, in considering the identical issue, have reached the same conclusion as the *Krall* court. *See, State v. Hanson,* 543 N.W.2d 84 (Minn.1996) (civil driver's license revocation pursuant to implied consent statute for driving under the influence did not bar subsequent criminal prosecution for same conduct under double jeopardy principles). The *Hanson* court reasoned:

... revocation of a driver's license ensures the public interest of protecting sober citizens on the roads against the private interest of the drunk driver. Although the temporary revocation of a driver's license may be painful and appear to "punish" the offender, the primary purpose of the law is to protect the public by removing from Minnesota's streets and highways those who drive under the influence of alcohol.

*Hanson, supra,* 543 N.W.2d at 89.

from the suspension of a motorist's license pursuant to § 1547 does not violate the principles of double jeopardy. Additionally, we note that the sanction of license suspension is imposed in response to a motorist's act of refusal to submit to chemical testing and not his act of operating a vehicle while intoxicated.

Accordingly, the prosecution of Appellant for DUI is not barred by the double jeopardy clauses of either the United States Constitution or the Pennsylvania Constitution, and the trial court properly refused to dismiss the charges.

Order affirmed.