**COMMONWEALTH of Pennsylvania**

v.

**John Willis TEAGARDEN, Appellant.**

Superior Court of Pennsylvania.

Argued April 8, 1997.

Filed May 23, 1997.

Jack W. Connor, Uniontown, for appellant.

Marjorie J. Fox, Asst. Dist. Atty., Waynesburg, for Com., appellee.

Before CIRILLO, President Judge Emeritus, and JOHNSON, J., and CERCONE, President Judge Emeritus.

CIRILLO, President Judge Emeritus:

■ John Willis Teagarden [1] appeals from the order entered in the Court of Common Pleas of Greene County denying his motion

---

1. The lower court docket refers to the defendant as John Willis Denver Teagarden.

to dismiss on double jeopardy grounds.[2] We affirm.

On November 19, 1994, Troopers Edward Schick and Thomas Reed of the Pennsylvania State Police were engaged in routine patrol when they received a radio communication that a truck had been stolen in nearby Waynesburg. Shortly thereafter, Troopers Schick and Reed saw a truck matching the description of the stolen vehicle. They attempted to stop the truck, but the truck sped off the road and onto a field. The Troopers gave chase. The occupants of the truck exited and fled on foot into the surrounding forest. Troopers Schick and Reed alighted from their cruiser and pursued the occupants on foot. The Troopers finally caught up to and arrested the occupants, one of whom was Teagarden. Upon arresting Teagarden and the others, the Troopers impounded the vehicle and its contents, which included various appliances.

The next day, Brian Waychoff arrived at his mobile home finding that it had been burglarized. He immediately went to the state police barracks to report the burglary. He told Trooper Brian A. Baker that he had left the mobile home at 5:30 p.m. the previous day and returned home at 10:00 a.m. the next morning to find the home burglarized. After conducting a thorough investigation, Trooper Baker suspected that Teagarden and the others had burglarized Waychoff's mobile home and had used the stolen truck to carry out the burglary. Trooper Baker showed Waychoff the appliances recovered from the truck which Waychoff identified as his. Teagarden and the other occupant of the vehicle were then charged with the burglary of Waychoff's mobile home.

Due to the length of time between Teagarden's arrest for the stolen truck and his subsequent arrest for burglary, the Commonwealth filed two separate actions against Teagarden. On April 26, 1995, nine days after arraignment on the burglary charge and four days prior to the commencement of jury selection in the stolen truck case, the Commonwealth filed a motion to consolidate the cases. After hearing argument, the trial court issued a rule to show cause as to why the cases should not be consolidated. In the meantime the court commenced jury selection in the stolen truck case. On June 2, 1995, the court ordered that the stolen truck case and the burglary case be consolidated and discontinued jury selection. Thereafter Teagarden filed a petition for writ of habeas corpus in the burglary case; this was denied. Teagarden then appealed the denial of the petition to our court. The trial court became concerned that if the consolidated cases were continued until our disposition of Teagarden's appeal that it "may have Rule 1100 problems." Accordingly, the trial court deconsolidated the cases and the stolen truck case proceeded to trial. Three days prior to jury selection in the stolen truck case, this court quashed Teagarden's appeal. A copy of our order quashing Teagarden's appeal was not given to the trial court, however, until after the jury had been impanelled in the stolen truck case. Due to our disposal of Teagarden's appeal, the Commonwealth sought to re-consolidate the cases. This motion, however, was denied.

The Commonwealth proceeded to trial in the stolen truck case after which a jury acquitted Teagarden. Following acquittal, Teagarden filed a motion to dismiss the charges in the burglary case based on double jeopardy grounds. This appeal followed. Teagarden presents the following issue for our consideration:

> Whether prosecution on the charges contained at the subject case number are barred pursuant to 18 Pa.C.S.A. section 110.2 and / or pursuant to the principles of collateral estopple [sic] as embodied in the

---

**2.** Pre-trial orders denying double jeopardy claims are immediately appealable in the absence of a written finding of frivolousness by the trial court that heard the claims. *See Commonwealth v. Brady*, 510 Pa. 336, 508 A.2d 286 (1986); *Commonwealth v. Breeland*, 445 Pa.Super. 147, 664 A.2d 1355 (1995). *See also Commonwealth v. Wolfe*, 454 Pa.Super. 93, 684 A.2d 642 (1996). Such a rule strikes the appropriate balance between the defendant's protection against being placed in double jeopardy against the public's interest in prompt trials of the criminally accused. *Brady*, 510 Pa. at 343–45, 508 A.2d at 290. Because there has been no discrete finding of frivolousness by the trial court, we have jurisdiction to entertain this appeal. *Brady, supra; Breeland, supra.*

Double Jeopardy Rule based on the verdicts of acquittal on the charges contained at case number 663 criminal sessions, 1994?

Teagarden asserts that pursuant to 18 Pa. C.S.A. § 110(2) the Commonwealth is prohibited from trying him on the burglary offense because in order to convict him, the jury would have to find his alibi witnesses incredible, directly contradicting the findings of the jury in the stolen truck case in which he was acquitted.

■■■ Section 110 of the Crimes Code governs situations where the prosecution is barred from a subsequent prosecution of the same defendant for different offenses. The relevant portion of Section 110 provides:

> Although a prosecution is for a violation of a different provision of the statutes than a former prosecution or is based on different facts, it is barred by such former prosecution under the following circumstances:
>
> (2) The former prosecution was terminated, after the indictment was found, by an acquittal ... which acquittal ... necessarily required a determination inconsistent with a fact which must be established for conviction of the second offense.

18 Pa.C.S.A. § 110. Section 110(2) codifies the ancient doctrine of collateral estoppel. *Id.* Collateral estoppel prevents relitigation between parties of an issue where that issue has been previously decided by a competent legal forum. *Commonwealth v. Wallace*, 411 Pa.Super. 576, 602 A.2d 345 (1992). In the criminal context, the doctrine of collateral estoppel is one of the many protections embodied in the double jeopardy clauses of both the Pennsylvania and Federal Constitutions. *See Commonwealth v. Smith*, 518 Pa. 15, 540 A.2d 246 (1988); *Commonwealth v. Hude*, 492 Pa. 600, 425 A.2d 313 (1980). *See also Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). While collateral estoppel falls under the auspices of the double jeopardy clause, the doctrine does not automatically bar subsequent prosecution, rather it will bar prosecution only if an issue or issues essential to the subsequent prosecution were necessarily determined in the first prosecution. *Id.* In that regard our supreme court has set forth a three-step approach that we must employ in the determination of the present appeal:

> (1) An identification of the issues in the two actions for the purpose of determining whether the issues are sufficiently similar and sufficiently material in both actions to justify in invoking the doctrine;
>
> (2) an examination of the record of the prior case to decide whether the issue was 'litigated' in the first case; and
>
> (3) an examination of the record of the prior proceeding to ascertain whether the issue was necessarily decided in the first case.

*Smith*, 518 Pa. at 26, 540 A.2d at 251 (*citing Commonwealth v. Hude*, 492 Pa. at 612, 617, 425 A.2d at 319, 322). In essence, our task is to ascertain "whether a rational jury could have grounded its verdict without inclusion of the issue defendant seeks to exclude from relitigation." *Id. Accord Commonwealth v. Cromwell*, 329 Pa.Super. 329, 478 A.2d 813 (1984). We note, however, that collateral estoppel simply does not apply to all evidence a jury may have utilized in reaching its decision. *Commonwealth v. Tolbert*, 448 Pa.Super. 189, 670 A.2d 1172 (1995). Thus, where one or several other rational explanations for the jury's actions exist, admission of evidence in a subsequent prosecution will not be excluded on collateral estoppel grounds. *Id.* Only if it is "clear that the jury has spoken with respect to a particular fact, [will] the Commonwealth no longer [be] permitted to request that another jury consider the same." *Tolbert*, 448 Pa.Super. at 205–06, 670 A.2d at 1181.

In order to aid in our determination, we are guided by the following three cases, all of which involve a defendant's attempt to invoke the doctrine of collateral estoppel. In *Commonwealth v. Smith, supra*, appellant attempted to argue that, due to his previous acquittal on charges of possession of the weapon used to kill the victim, subsequent charges for murder should have been dismissed. Appellant asserted that because possession of the murder weapon was an essential element of the proof of murder, that section 110(2) of the Crimes Code acted to bar the murder prosecution. In addressing

appellant's collateral estoppel claim, our supreme court held appellant's acquittal did not necessarily litigate or decide an issue that was dispositive of the murder prosecution. *Smith*, 518 Pa. at 25–29, 540 A.2d at 251–52. In so doing, the court stated that there were numerous other reasons that could have formulated the jury's decision of acquittal on the possession charge other than the inference that appellant did not actually have the firearm. For example, the court noted that the acquittal on the handgun possession charge could have been based upon the Commonwealth's failure to prove that appellant carried the gun on public property or the streets, or to demonstrate that appellant lacked a license. *Id.* The court thus concluded that appellant's acquittal did not prove that appellant did not have the gun and, therefore, collateral estoppel did not prevent him from being tried for murder. *Id.* at 29–31, 540 A.2d at 253.

In *Commonwealth v. Cromwell, supra,* appellant was charged with committing burglaries in two separate counties. He was first tried on the burglary charges in Somerset County. At his trial, the Commonwealth presented testimony of witnesses who stated that they were appellant's accomplices during the commission of the robberies. Because these witnesses were found lacking in credibility, appellant was acquitted on the robbery charges in Somerset County. After his acquittal, appellant sought to preclude prosecution in Bedford County for those burglaries committed therein on the basis that the jury's finding that the Commonwealth's witnesses were incredible collaterally estopped the use of those same witnesses' testimony in the Bedford County action. We held that the jury's determination that the witnesses were not credible is "not necessarily ... inconsistent with [any] fact which must be established for conviction of the offenses allegedly committed in Bedford County," because the Commonwealth may possess other evidence which would tend to prove defendant's guilt. *Cromwell,* 329 Pa.Super. at 335–37, 478 A.2d at 816. Moreover, we stated that since the testimony concerned two separate and distinct incidents, the judgment of credibility concerning testimony of one event is not preclusive on another jury's possible differing judgment. *Id.*

Finally, in *Commonwealth v. Tolbert, supra,* appellants were tried for charges stemming from the beating death of one Hector Maldonado. The jury returned verdicts of not guilty on the charges of first-degree murder, second-degree murder, voluntary manslaughter, kidnapping and conspiracy, but deadlocked on the charge of third-degree murder. Appellants were then retried separately. At each retrial the Commonwealth was precluded from introducing evidence of a criminal conspiracy to kill Maldonado, that the murder was committed with the specific intent to kill, and evidence of kidnapping, based upon collateral estoppel principles. The trial court, however, did not preclude the Commonwealth from offering relevant evidence pertaining to the charge of third-degree murder. Appellants appealed that ruling to this court arguing that the accomplice liability theory which the Commonwealth would introduce to prove third-degree murder violated double jeopardy since the Commonwealth would introduce evidence of conspiracy to kill and kidnapping for which they had been acquitted. Specifically, appellants argued the Commonwealth was precluded from presenting any testimony tending to prove that they were together looking for the victim on the night of the killing, since such evidence tends to prove a conspiracy. We held that appellant's argument was flawed because we could not necessarily ascertain that the jury acquitted appellants by rejecting all of this testimony. *Tolbert,* 448 Pa.Super. at 205–11, 670 A.2d at 1181–83. On the contrary, we explained that the jury could have merely rejected that appellants had agreed to look for the victim with the intent to kill. *Id.* Because there was no definitive finding of issue preclusion, we held that collateral estoppel should not bar retrial on the third-degree murder charges. *Id.*

We are presented in the instant case with the issue of whether it is necessary for the jury in the burglary case to believe that Teagarden possessed the stolen truck in order to be convicted of burglary. Teagarden argues that such evidence is necessary and, consequently, his burglary prosecution must

be dismissed. Specifically, Teagarden explains that the jury in the stolen truck case found credible testimony that Teagarden had been playing cards at a friend's house and had only entered the truck immediately prior to its being spotted by the police and that this testimony proved that he lacked the intent to receive the stolen property, i.e., the truck. Teagarden further asserts that the burglary charge stems in large part from the fact that the items stolen were found in the bed of the truck in which he was riding. Teagarden concludes, therefore, that for him to be convicted of burglary a jury must disregard the finding of the jury in the stolen truck case and find that Teagarden was in the truck for a prolonged period of time and not at his friend's residence playing cards.

After carefully reviewing the record in the stolen truck case, as well as conducting a thorough examination of the elements of the crimes charged, we conclude that the jury did not necessarily determine that Teagarden's witnesses conclusively established that Teagarden was with them playing cards the entire evening, and thus, precluded a finding that he participated in the burglary. Contrary to Teagarden's assertions that he would have been convicted of receiving stolen property and criminal conspiracy but for the jury finding all of his witnesses' testimony credible, there are a multitude of other reasons for which the jury might have acquitted Teagarden. *Smith, supra; Tolbert, supra.* The jury could have concluded that the Commonwealth failed to prove that Teagarden intended to receive stolen property or that he had not agreed to do so. It does not necessarily follow that the jury concluded that Teagarden was playing poker all evening and thus could not have committed the burglary. Even accepting as true that the jury acquitted Teagarden for the reason that Teagarden was not present when the truck was stolen, it does not necessarily follow that the jury conclusively believed all of his witnesses' testimony. That is, the jury did not have to believe that Teagarden was not picked up after the vehicle was stolen and then participated in the burglary. For all of these reasons, we conclude that Teagarden's burglary charge is not barred by the collateral estoppel component of double jeopardy.

Order affirmed.