896 F.Supp. 577 (1995)
James T. MURPHY, Plaintiff,
v.
COMMONWEALTH OF VIRGINIA, et al., Defendants.
Civ. A. No. 95-936-A.
United States District Court, E.D. Virginia, Alexandria Division.
August 17, 1995.
*578 John K. Zwerling, Joel B. Simberg, Moffitt Zwerling & Kemler, P.C., Alexandria, VA, for plaintiff.
John Klock, Commonwealth's Attorney, Erik Barnett, Assistant Commonwealth's Attorney, Alexandria, VA, for the Commonwealth's Attorney Office of the City of Alexandria.
James Gilmore, Attorney General, Peter R. Messitt, Senior Assistant Attorney General, Richmond, VA, for the Attorney General's Office of the Commonwealth of Virginia.

*579 MEMORANDUM OPINION
ELLIS, District Judge.
In this habeas corpus proceeding, James T. Murphy ("Murphy") seeks a federal injunction, on double jeopardy grounds, to halt a state prosecution against him for driving while intoxicated ("DWI"). More specifically, Murphy, whose license was administratively suspended for seven days pursuant to Virginia's automatic license suspension ("ALS") statute, claims that the impending criminal trial would violate his double jeopardy rights because the ALS constituted punishment for the DWI offense. At issue, therefore, is whether the Double Jeopardy Clause bars the state from subjecting a person to a criminal trial for DWI, in violation of Virginia Code § 18.2-266, after that person has had his driver's license suspended under the ALS procedure of Virginia Code § 46.2-391.2. Yet, because the relief sought is a federal injunction against a state criminal proceeding, the vital threshold question is whether abstention under Younger v. Harris is warranted.

I.
The dispositive facts are undisputed. On February 27, 1995, plaintiff James Murphy was arrested by an Alexandria police officer for cocaine possession, in violation of Virginia Code § 18.2-250, and for driving while intoxicated, in violation of City of Alexandria Ordinance § 10-3-266. As an automatic consequence of this arrest, Murphy's license was administratively suspended for a period of seven days pursuant to the state's ALS statute, Virginia Code § 46.2-391.2. This statute requires a police officer to serve notice of a seven-day license suspension on a person arrested for DWI when a breath test shows that the person's blood alcohol content ("BAC") is 0.08 per cent or more. In accordance with this provision, Murphy, whose BAC apparently exceeded this percentage, was served with a license suspension notice. Because he could not pursue his livelihood as the sole proprietor of a trucking firm without a driver's license, Murphy sought prompt relief from the state's General District Court. That effort failed.
Thereafter, at a preliminary hearing on charges of cocaine possession and DWI, the prosecutor nolle prossed the arrest warrant over Murphy's objection. But the matter did not end there. Approximately two months later, on May 1, 1995, the Commonwealth's Attorney sought and obtained a two-count indictment charging plaintiff with cocaine possession in violation of Virginia Code § 18.2-250 (Count I), and driving while intoxicated in violation of § 18.2-266 (Count II). On June 22, plaintiff moved the Circuit Court for the City of Alexandria to dismiss Count II, the DWI charge, on double jeopardy grounds. He claimed it violated his rights under the Fifth and Fourteenth Amendments to the United States Constitution because he had already been punished by the ALS for the same offense. The Alexandria Circuit Court denied this motion on June 26, and on July 6, Murphy moved that court for a stay of the DWI trial to permit him to litigate his double jeopardy claim. This motion was also denied, and, as the motion was interlocutory, no appeal was available. Plaintiff thereafter instituted this action against the Commonwealth of Virginia, the Circuit Court for the City of Alexandria, and John E. Kloch, the Commonwealth's Attorney for the City of Alexandria, requesting habeas corpus relief under 28 U.S.C. § 2254 in the form of an injunction against Count II of the criminal trial scheduled for August 17. Defendants have moved to dismiss the complaint.
The record reflects that no material facts are in dispute, and the parties agree that this matter is now ripe for disposition. Accordingly, for the reasons that follow, defendants' motion to dismiss must be granted, and plaintiff's petition for relief under § 2254 must be dismissed.

II.
As a preliminary matter, the parties agree that Murphy's habeas petition is properly before the Court. See 28 U.S.C. § 2254. Murphy has presented his double jeopardy claim to the Alexandria Circuit Court, which denied relief. State procedural law precludes interlocutory appellate review of the *580 Circuit Court's ruling.[1] Indeed, defendants have not suggested that Murphy could obtain pretrial review from any state court. Plaintiff's state pretrial remedies in this matter have therefore been exhausted, and consideration of habeas relief is appropriate.[2]

III.
In seeking to enjoin his state DWI prosecution on double jeopardy grounds, Murphy confronts a significant threshold obstacle in the form of the Younger doctrine. See Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). This doctrine holds that a federal court injunction against a state criminal proceeding is "a violation of the national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances." Younger, 401 U.S. at 41, 91 S.Ct. at 749. Accordingly, Younger and its progeny teach that federal courts should only rarely issue injunctive relief against pending state criminal proceedings.[3]
Younger rests on two separate yet mutually supportive pillars. The first is the traditional equitable principle that "courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." Younger, 401 U.S. at 43-44, 91 S.Ct. at 750. The second and primary rationale underlying the doctrine is comity, the prudential constraints of federalism. Federalism embodies the belief that "the National Government will fare best if the states and their institutions are left free to perform their separate functions in their separate ways." Younger, 401 U.S. at 44, 91 S.Ct. at 750. This concept of comity requires that a federal court, "anxious though it may be to vindicate and protect federal rights and federal interests, always endeavor[] to do so in ways that will not unduly interfere with the legitimate activities of the States." Id. Specifically, Younger establishes that, in general, respect for the integrity of state judicial processes forcefully counsels against interference with those processes by the federal courts.
But this counsel is not absolute or invariable. Indeed, the Younger abstention doctrine is rooted in equity and in notions of federalism and comity that are themselves not absolute. Younger, therefore, does not announce an absolute or invariable rule. Rather, it calls for a sensitive assessment and weighing of the sometimes competing interests of federalism on the one hand and the vindication of federal constitutional rights on the other. The doctrine is thus more accurately viewed as a strong general presumption against federal interference in state criminal proceedings, but a presumption that can be overcome in extraordinary circumstances. In such circumstances, the dictates of comity and federalism must yield to weightier concerns. Younger itself indicated that cases involving bad faith or multiple prosecutions,[4] statutes that are patently unconstitutional on their face,[5] and situations where no adequate state forum is available to *581 hear the complaint[6] could constitute exceptions to the general rule of abstention. Moreover, the Younger Court's list of exceptions was not meant to be exhaustive, and subsequent cases have accordingly identified other situations that merit federal court intervention consistent with Younger.[7] In particular, a number of courts have recognized that a colorable double jeopardy claim may constitute another such "special circumstance" in which Younger does not bar issuance of an injunction.[8] The Fourth Circuit, sitting en banc, has recently endorsed the view that a double jeopardy allegation "is a preeminent example of one of the very few `unusual circumstances' justifying federal court intervention in a state proceeding." Gilliam v. Foster, 61 F.3d 1070 (4th Cir.1995) (en banc).[9]
The analysis does not end here, however, for a careful review of Gilliam and its antecedents supports the conclusion that not all double jeopardy claims are fungible; not all such claims merit the same treatment under Younger. Specifically, double jeopardy claims based on multiple punishments differ from double jeopardy claims based on multiple prosecutions in a way that is decisively relevant in applying Younger. The path to this conclusion is as follows.
To begin with, we know from Younger and its progeny, including the recent Gilliam case, that extreme disruption can result from federal intervention.[10] Any exceptions to Younger must, therefore, be drawn narrowly and with great caution. The various rationales behind the exceptions demand this circumspection. These rationales vary somewhat, depending on the circumstances and nature of the exception. In cases of bad faith or multiple prosecutions or an inadequate state forum, for example, the federal plaintiff has additional need for aid from the federal courts to obtain relief because state processes have proven somehow insufficient. Where statutes are blatantly unconstitutional, the inequity of requiring the plaintiff to suffer a constitutional wrong seems so compelling that the federal court may step in. In the context of certain double jeopardy claims, the reasoning is similarly clear: once a criminal defendant has fruitlessly pursued all state remedies available to him, "there is no further bar to the assumption of federal jurisdiction, for the deference owed to the state judicial system demanded by principles of comity and federalism has been paid." Drayton v. Hayes, 589 F.2d at 120. But despite the obvious differences in their rationales, these various exceptions to *582 Younger abstention share a common characteristic: in all instances, the harm the plaintiff will suffer absent federal court intervention is so immediate and so severe that the plaintiff's interest in avoiding that harm outweighs the harm to the delicate balance of federalism.[11]
Moreover, these exceptions, coupled with the criteria of Younger and its progeny, point persuasively to the soundness of a distinction in the double jeopardy context between cases involving the threat of multiple prosecutions and those involving the threat of multiple punishments. Indeed, the Supreme Court, in language quoted by the Fourth Circuit majority in Gilliam, noted the validity of this distinction:
[T]he rights conferred on a criminal accused by the Double Jeopardy Clause would be significantly undermined if appellate review of double jeopardy claims were postponed until after conviction and sentence. To be sure, the Double Jeopardy Clause protects an individual against being twice convicted for the same crime, and that aspect of the right can be fully vindicated on an appeal following final judgment. ... However, this Court has long recognized that the Double Jeopardy Clause protects an individual against more than being subjected to double punishments. It is a guarantee against being twice put to trial for the same offense....
Gilliam, 61 F.3d at 1081 (quoting Abney v. United States, 431 U.S. 651, 660-61, 52 L.Ed.2d 651 (1977)) (emphasis in original). The soundness of drawing a distinction between multiple punishments and multiple prosecutions in this context is apparent: If an accused is facing multiple convictions (and, therefore, multiple punishments) in violation of the Double Jeopardy Clause, he may appeal those convictions to obtain full relief. If, by contrast, he faces multiple prosecutions, neither the second (or third, or fourth) trial itself nor an appeal therefrom can provide him with a remedy; the trial itself is the constitutional wrong, above and beyond any possible punishment. Thus, in weighing the potential harm to a defendant claiming the protection of the Double Jeopardy Clause against the potential harm to the integrity of the state criminal process, as Younger requires, the bare fact that the plaintiff has made out a double jeopardy claim is not enough to justify an injunction.[12] Ordinarily, only where a state criminal defendant faces multiple prosecutions is a federal injunction warranted on double jeopardy grounds.[13] Judge Posner has recognized this point, noting in a double punishment case that, although the plaintiff's upcoming trial would clearly offend the Double Jeopardy Clause, "it would not flout `The policy of avoiding multiple trials,' which is the only objective of the double jeopardy clause that cannot be adequately protected by appeal from (or collateral attack on) a judgment of conviction in the second prosecution," United States ex rel. Stevens v. Circuit Court of Milwaukee County, 675 F.2d 946, 948 (7th Cir.1982) (citation omitted). Acting on this principle, Judge Posner, speaking for a unanimous panel in Stevens, declined to enjoin the state trial of a criminal defendant who argued that the criminal charges he faced placed him in double jeopardy because they were the same charges to which he had already pled guilty. Id. In short, because the plaintiff could obtain full relief from the state courts, the constitutional violation was not deemed grave *583 enough to outweigh the vital considerations of comity that underlie Younger.
In a case involving multiple prosecutions, on the other hand, no remedy is available from the state. It would be patently inequitable to deny the plaintiff relief in such a case, so inequitable as to render the considerations of comity that underlie Younger "overborne." Stevens, 675 F.2d at 947. Indeed, abstention in that case would violate the principles of comity and federalism expressed in Younger. A case of multiple prosecutions is one of those occasions when, precisely because of federalism, a federal court must not hesitate to act. Our federal system is designed to allow federal courts to intervene when there is a need to vindicate important federal constitutional rights and those rights might not otherwise be appropriately and timely vindicated.[14]
When applied to the case at bar, these principles compel abstention. Murphy's double jeopardy claim is based on multiple punishments, not multiple prosecutions. His license was suspended automatically, and, contrary to plaintiff's assertion, this mechanical ALS procedure was not a prosecution. Although Murphy did challenge the suspension, and a hearing was held, Murphy invoked that hearing on his own initiative; he was not haled into court by the power of the state to answer to a criminal charge. Murphy's impending trial is the only trial. As in Stevens, the violation here thus does not flout the policy of avoiding multiple trials, the only policy behind the Double Jeopardy Clause that would require the extreme measure of federal court interference in state criminal proceedings. See Stevens, 675 F.2d at 948-49.
Because this is a multiple punishment case, Murphy has a remedy available to him in the state system. He can raise his double jeopardy claim as a defense to the DWI charge he faces and then appeal if he is convicted. Moreover, Murphy need not suffer any punishment during an appeal should one become necessary. Virginia presumably has a procedure analogous to 18 U.S.C. § 3143(b), whereby the state circuit court can in certain circumstances stay a sentence pending a possibly meritorious appeal.[15]
Murphy has, nonetheless, presented a double jeopardy claim that is colorable, if not compelling. Indeed, from this early vantage point, it seems to merit relief. To succeed under his double jeopardy claim, Murphy would have to demonstrate that a second trial would constitute (1) a second punishment (2) in a separate proceeding (3) for the same offense.[16] Although the ALS serves remedial goals in part, it contains significant aspects of deterrence and retribution and therefore should be characterized as punishment.[17] In addition, the rather arbitrary *584 length of the suspension period (seven days) ensures that it is both longer than necessary to allow the driver time to sober up and shorter than necessary to allow any meaningful rehabilitation to occur. Indeed, defendants' counsel made a telling admission at oral argument when he acknowledged that the ALS is meant to get the attention of someone accused of DWI. The ALS is also tied directly to the guilt of the accused; if the underlying DWI charge is dismissed or ends in acquittal, the suspension automatically terminates as well.[18]
Murphy also appears able to establish the other two elements of the double jeopardy claim. The facts are particularly persuasive as to the "separate proceeding" test in this case, where the state's attorney nolle prossed the initial prosecution and later obtained a separate indictment based on a different statutory provision. It would be difficult, to say the least, to portray the ALS, based on an arrest warrant and completed in March, as part of the same proceeding as a trial based on an indictment obtained in May. As for the "same offense" test,[19] the BAC of 0.08 required for the ALS creates a rebuttable presumption of intoxication under the criminal DWI statute.[20] Thus, the same conduct  driving a car while intoxicated on February 27, 1995  is necessary and sufficient for both the ALS and the criminal conviction.
In sum, although a preliminary view of the merits of Murphy's double jeopardy claim appears favorable to plaintiff,[21] that fact is not dispositive. Under Younger and its progeny, the call for equity presented by Murphy's petition is not sufficiently strong, and his claim is not sufficiently egregious and without redress, to warrant a disruptive federal intervention of an impending state criminal trial. The courts of the Commonwealth of Virginia are as capable as any federal court to discern and apply the commands of the Fifth and Fourteenth Amendments to the United States Constitution, and the principles underlying Younger mandate that they be permitted in this instance to do so.
NOTES
[1] West v. Commonwealth, 249 Va. 241, 455 S.E.2d 1 (1995).
[2] See also Gilliam v. Foster, 61 F.3d 1070, 1075-76 (4th Cir., 1995) (en banc), where the Fourth Circuit granted habeas relief in circumstances procedurally identical to the case at bar.
[3] By contrast, cases after Younger have held that declaratory or preliminary injunctive relief against future state prosecutions may be appropriate. See Doran v. Salem Inn, Inc., 422 U.S. 922, 930-31, 95 S.Ct. 2561, 2567-68, 45 L.Ed.2d 648 (1975) (preliminary injunctive relief); Steffel v. Thompson, 415 U.S. 452, 462, 94 S.Ct. 1209, 1217, 39 L.Ed.2d 505 (1974) (declaratory relief).
[4] Younger, 401 U.S. at 53-54, 91 S.Ct. at 754-55; Fitzgerald v. Peek, 636 F.2d 943, 944-45 (5th Cir.1981), cert. denied, 452 U.S. 916, 101 S.Ct. 3051, 69 L.Ed.2d 420 (1981) (enjoining bad faith prosecution as exception to Younger doctrine); Krahm v. Graham, 461 F.2d 703, 706-07 (9th Cir.1972) (finding Younger not to apply in case of both bad faith and multiple prosecutions).
[5] Younger, 401 U.S. at 53-54, 91 S.Ct. at 754-55; Tolbert v. City of Memphis, 568 F.Supp. 1285, 1293 (W.D.Tenn.1983) (holding federal injunction proper against enforcement of city ordinance that violated First Amendment on its face); Orazio v. Town of North Hempstead, 426 F.Supp. 1144, 1147 (E.D.N.Y.1977) (same); cf. Trainor v. Hernandez, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977) (illustrating Court's extremely narrow construction of this exception).
[6] Younger, 401 U.S. at 53-54, 91 S.Ct. at 754-55; Gerstein v. Pugh, 420 U.S. 103, 107-08 n. 9, 95 S.Ct. 854, 859-60 n. 9, 43 L.Ed.2d 54 (1975) (finding state forum inadequate because there was no preliminary hearing at which plaintiffs could present constitutional claims as to pretrial conditions); Gibson v. Berryhill, 411 U.S. 564, 575-78, 93 S.Ct. 1689, 1696-97, 36 L.Ed.2d 488 (1973) (finding state forum inadequate because of bias of administrative adjudicators).
[7] For example, a State may choose to waive the protections afforded by Younger. Ohio Bureau of Employment Servs. v. Hodory, 431 U.S. 471, 480, 97 S.Ct. 1898, 1904, 52 L.Ed.2d 513 (1977). More accurately, perhaps, a State may request that the federal court not abstain from reaching the merits of the case. Cf. Gilliam, 61 F.3d at 1084 n. 12.
[8] See, e.g., Mannes v. Gillespie, 967 F.2d 1310, 1312 (9th Cir.1992), cert. denied, ___ U.S. ___, 113 S.Ct. 964, 122 L.Ed.2d 121 (1993); Satter v. Leapley, 977 F.2d 1259, 1261 (8th Cir.1992); Davis v. Herring, 800 F.2d 513, 516 (5th Cir. 1986); Gully v. Kunzman, 592 F.2d 283, 286-87 (6th Cir.1979); Drayton v. Hayes, 589 F.2d 117, 120 (2d Cir.1979).
[9] See also Commonwealth v. Kelly, 29 F.3d 145 (4th Cir.1994) (dissolving District Court stay of criminal trial on basis that double jeopardy claim was meritless, and hence implying that stay would have been proper had claim been meritorious); Carter v. Medlock, 43 F.3d 1465, 1994 WL 687287 (4th Cir.1994) (unpublished) (stating that "[C]laims that further prosecution is barred by the Double Jeopardy Clause provide the chief exception to the rule" of Younger).
[10] For a vivid example of the kind of disruption that can occur, see Gilliam, 61 F.3d 1070. That case, in which the Fourth Circuit did decide to enjoin the state criminal trial (already in progress) to allow the federal district court to hear the merits of the plaintiffs' habeas claims, produced startling results. The state did not seek a stay or an appeal, and the federal district court granted the habeas relief shortly before midnight on a Friday. Minutes later, the trial court released the sequestered jurors and, again without seeking a stay or appeal, prepared to order the release of three defendants charged with murder and lynching.
[11] In considering whether an exception, like that for double jeopardy, applies, the calculus of Younger also requires a preliminary assessment of the merits. The clearer the constitutional violation, the more appropriate the intervention and possible disruption by a federal court. But although the merits of the double jeopardy claim are a factor to be weighed, they are not dispositive. For example, even the clearest Fourth Amendment violation would not, standing alone without any accompanying prosecutorial misconduct or bad faith, constitute an appropriate exception to the Younger abstention doctrine.
[12] Were this not so, then every Fourth Amendment claim asserted by a state defendant would arguably present an exception to the Younger doctrine. This is plainly not the case. Instead, such claims must be tested first by way of appeal in the state system. Only after exhaustion of state remedies are these claims appropriately raised under 28 U.S.C. § 2254.
[13] Of course, a case involving a double jeopardy claim of multiple punishments might also warrant federal court interference if prosecutorial bad faith or one of the other exceptions to the Younger doctrine were found to apply.
[14] Established authority supports this reasoning. In each of the reported cases finding double jeopardy claims to be an exception to Younger, the claims have involved multiple prosecutions. See, e.g., cases cited supra note 7. Gully, although it did involve a double jeopardy claim of enhanced punishment, was also and primarily a retrial situation. See Gully, 592 F.2d 283. The Seventh Circuit's decision in Stevens provides further support, as it declined to enjoin a state criminal trial based on the multiple prosecution/multiple punishment distinction.
[15] Indeed, defendants' counsel represented to the Court during oral argument that the Alexandria Circuit Court will customarily stay a sentence in such situations. If, however, Murphy is convicted of the DWI charge, and if the Alexandria Circuit Court declines to stay his punishment, this Court might be inclined to consider a new request for habeas relief under Younger. Federal injunctive relief after trial and judgment seems less intrusive and disruptive, and hence the calculus of harms under Younger may well come out differently. Moreover, it is relevant to note that Murphy's double jeopardy claim appears to have merit. See supra note 11 and infra text accompanying notes 16-21.
[16] See United States v. Halper, 490 U.S. 435, 440-41, 109 S.Ct. 1892, 1897-98, 104 L.Ed.2d 487 (1989). The Fifth Amendment's Double Jeopardy Clause forbids three different kinds of actions by the government with respect to the same offense by an accused: retrying the defendant after an acquittal, retrying the defendant after a conviction, and imposing multiple punishments in separate proceedings. North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); Halper, 490 U.S. at 440, 109 S.Ct. at 1897. The first two prohibitions are not at issue in this situation.
[17] As the Supreme Court stated in Halper, "[A] civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment." Halper, 490 U.S. at 448, 109 S.Ct. at 1901-02. Two later Supreme Court decisions, Austin v. United States and Department of Revenue of Montana v. Kurth Ranch, have employed a "totality of the circumstances" test outside the narrow Halper context of administrative fines. See Kurth Ranch, ___ U.S. ___, ___-___, 114 S.Ct. 1937, 1945-48, 128 L.Ed.2d 767 (1993); Austin, ___ U.S. ___, ___, 113 S.Ct. 2801, 2812, 125 L.Ed.2d 488 (1993). Regardless of the standard employed here, however, the ALS procedure appears to be primarily punitive rather than remedial in both effect and purpose. See also Report of the Department of Motor Vehicles, Commission on Virginia Alcohol Safety Action Program, and the Transportation Safety Board, "Administrative Revocation of Driver's Licenses," Senate Document No. 8, at 31 (1990) ("[M]any believe that in order to achieve the optimal deterrent effect, the action must occur immediately and result in a punishment severe enough to discourage drivers from ever driving intoxicated or under the influence of drugs in the first place.").
[18] Va.Code § 46.2-391.4(a).
[19] The Supreme Court has held that two offenses are not the same, and thus prosecution for both is not barred by the Double Jeopardy Clause, if each contains an element absent from the other. Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932).
[20] Va.Code § 18.2-269.
[21] A number of recent cases decided by Virginia criminal courts have reached the same conclusion in the same or very similar circumstances. See Commonwealth v. Derflinger, CR XX-XXXXXX, May 31, 1995 (General District Court, Fairfax County); Commonwealth v. Rush, CR 95-63, July 7, 1995 (Circuit Court, Fauquier County); Commonwealth v. Hess, CR 95-1367, Apr. 7, 1995 (General District Court, Orange County). But see Commonwealth v. Branham, CR 95-000115 (Orange County Circuit Court) (overruling plea in bar of double jeopardy).