**UNITED STATES of America**

v.

**Wilfredo M. MARTINEZ.**

**Criminal No. 87–127–N.
Civil No. 2:96cv173.**

United States District Court,
E.D. Virginia,
Norfolk Division.

April 23, 1996.

Michael R. Smythers, U.S. Attorney's Office, Norfolk, VA, for Plaintiffs.

Wilfredo M. Martinez, Miami, FL, pro se.

## MEMORANDUM AND FINAL ORDER

CLARKE, District Judge.

Wilfredo M. Martinez is a federal prisoner challenging *pro se* his 1988 conviction by jury in this Court on drug charges. Martinez proceeds under 28 U.S.C. § 2255. Some three weeks prior to his scheduled April 11, 1988 trial, Martinez and his co-defendant mother, Defla Ramirez Martinez, skipped bail and fled from this jurisdiction. Martinez and his mother were tried *in absentia* and found guilty on all charges. Martinez now argues that the Supreme Court's decision in *Crosby v. United States*, 506 U.S. 255, 113 S.Ct. 748, 122 L.Ed.2d 25 (1993), renders his conviction invalid. For the reasons set out below, the Court disagrees. Accordingly, Martinez's Motion to vacate, set aside, or correct a sentence is **DENIED.**

### I. BACKGROUND

In November of 1987, Martinez was indicted on seven counts related to his involvement as leader of a cocaine distribution conspiracy. On February 10, 1988, Martinez appeared in this Court before a Magistrate Judge, waived arraignment, and pled not guilty. In the defendant's presence, jury trial was set for April 11, 1988. Martinez remained free on a $100,000 court appearance bond. On March 21, Martinez was absent from a scheduled court appearance. Martinez's bond was revoked and a warrant for his arrest was issued. On March 28, Martinez again did not appear at a court proceeding. On April 11, Martinez did not appear for his trial date. The government moved for forfeiture of Martinez's bond. An affidavit of a Federal Bureau of Investigations agent assigned to this case was admitted in support of the government's motion. The agent's affidavit stated that on March 21 Martinez had contacted his attorney ostensibly from Miami, Florida, and stated his intention to make the court appearance on that day. Following Martinez's non-appearance, local police went to Martinez's Miami residence and found an empty house and four days worth of newspapers laying in front of the house. An FBI investigation revealed that on March 19 or 20, a moving truck went to Martinez's home and emptied the home of furniture. Martinez's attorney was no longer in contact with his client and did not know his whereabouts. Based on this information, the Court ordered Martinez's bond forfeited.

Before the start of the trial, Defendant's counsel moved for a continuance because of his client's absence. The Court ascertained that Martinez was aware of the trial date. When questioned by the Court, Martinez counsel stated:

> They [Defendant and his mother] knew of the trial date. I had gone over the trial date with them. In fact, I told them to make airplane reservations in advance because of the fare savings, and things of that nature. No question they knew of the trial date; they knew of the other hearing which I've introduced telegrams notifying them of the hearing.

Trial Proc. at 6. The government argued against Defendant's motion citing the clear evidence of flight, the evidentiary problems caused by further delay in the trial, the expense to the government of producing witnesses, and the exposure to danger for the government's witnesses until they in fact did testify. Trial Proc. at 7–9. The Court denied Defendant's motion noting that the likelihood of Defendant showing up for trial soon was nil and that continuance would put the government through great and unnecessary expense. Trial Proc. at 10.

Defendant was tried *in absentia*, though still represented by counsel. During the one-day trial, the government put on fourteen witnesses and introduced twenty-one exhibits. The defense rested without presenting evidence. After deliberating for one hour and fifteen minutes, the jury found Martinez guilty on all seven counts of the indictment. Trial Proc. at 276, 278–79. Following his arrest in Tampa, Florida in December of 1988, Martinez was returned to this Court. On April 3, 1989, he was sentenced to twenty years in prison and a $10,000 fine.

Martinez appealed his conviction and sentence partly on the ground that this Court erred in allowing Defendant to be tried *in absentia*. The Fourth Circuit denied this claim citing circuit precedent that deemed a voluntary absence from trial a waiver of the right to be present at trial. *United States v. Martinez,* No. 89–5805, slip op. at 4–5, 1991 WL 89932 (4th Cir. June 24, 1991). Martinez filed a Petition for Certiorari in the United States Supreme Court but did not raise the trial *in absentia* issue. Martinez's Petition was denied on October 7, 1991.

## II. ANALYSIS

### a. The Crosby Decision

Martinez's sole claim in this § 2255 motion is that the Supreme Court's 1993 decision in *Crosby,* 506 U.S. at 255, 113 S.Ct. at 748, rendered his conviction invalid. In *Crosby,* the Court addressed "whether Federal Rule of Criminal Procedure 43 permits the trial *in absentia* of a defendant who absconds prior to trial and is absent at its beginning." *Id.* at 256, 113 S.Ct. at 749–50. Rule 43 states in relevant part:

(a) **Presence Required.** The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.

(b) **Continued Presence Not Required.** The further progress of the trial to and including the return of the verdict, and the imposition of sentence, will not be prevented and the defendant will be considered to have waived the right to be present whenever a defendant, initially present . . . ,

(1) is voluntarily absent after the trial has commenced . . .

Fed.R.Crim.P. 43(a)–(b). The Court noted that under the common law, felony defendants had an unwaivable right to be present at trial. In 1912, the Supreme Court recognized a limited exception to this general rule for situations where a defendant voluntarily absents himself during the course of a trial. *Diaz v. United States,* 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912). This exception, specific to the facts of the case, only applied

in cases where the trial had "begun in [the defendant's] presence." *Id.* at 455, 32 S.Ct. at 254. The Court in *Crosby* held that the "language, history, and logic of Rule 43 support a straightforward interpretation that prohibits the trial *in absentia* of a defendant who is not present at the beginning of trial." 506 U.S. at 262, 113 S.Ct. at 753. Having decided the case by interpretation of the Federal Rule, the Court specifically did not reach the issue of the constitutionality of trial *in absentia. Id.*

### b. Scope of Collateral Review

■ If Martinez were being tried today, *Crosby* clearly establishes that he could not be tried if he was absent at the beginning of the trial. However, in this § 2255 motion, Martinez asks the Court to retroactively apply *Crosby* to upset an otherwise final conviction. Collateral attack on a sentence through a § 2255 motion is not a substitute for an appeal. *Mackey v. United States,* 401 U.S. 667, 683, 91 S.Ct. 1160, 1175, 28 L.Ed.2d 404 (1971) (opinion of Harlan, J., concurring in judgments in part and dissenting in part); *see also Kuhlmann v. Wilson,* 477 U.S. 436, 447, 106 S.Ct. 2616, 2623, 91 L.Ed.2d 364 (1986) (plurality opinion) ("the Court never has defined the scope of the writ [of habeas corpus] simply by reference to a perceived need to assure that an individual accused of crime is afforded a trial free of constitutional error."). In considering a collateral attack on a final sentence, society's strong interest in finality must be weighed against the liberty interest asserted by the defendant. *See Teague v. Lane,* 489 U.S. 288, 309, 109 S.Ct. 1060, 1074, 103 L.Ed.2d 334 (1989) (plurality opinion).

### c. Retroactivity of Crosby under Teague

■ In opposition to Martinez's motion, the government argues that the Supreme Court's decision in *Teague* bars the retroactive application of *Crosby* in this case. *See id.* at 305–10, 109 S.Ct. at 1072–75. The *Teague* rule holds that "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *Id.* at 310, 109 S.Ct. at 1075. (opinion of O'Connor,

J.).[1] The *Teague* rule was created to address habeas corpus claims brought under 28 U.S.C. § 2254 challenging the legitimacy of state court judgments. The Supreme Court has never addressed whether *Teague* was applicable in federal habeas cases brought under § 2255. *See United States v. Tayman*, 885 F.Supp. 832, 837 (E.D.Va.1995). However, many lower courts have expressly held or assumed that *Teague* applies in § 2255 proceedings. *Id.* at n. 19, n. 20 (collecting cases). The Supreme Court has recognized that the scope of a § 2255 motion mirrors that of a § 2254 motion. *See Davis v. United States*, 417 U.S. 333, 343, 94 S.Ct. 2298, 2304, 41 L.Ed.2d 109 (1974) ("[section] 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus"); *Hill v. United States*, 368 U.S. 424, 427, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962) (section 2255 "was intended simply to provide the sentencing court a remedy exactly commensurate with that which had previously been available by habeas corpus in the court of the district where the prisoner was confined"). Because the *Teague* rule was created in part to address the important concerns for finality in habeas cases and that interest is shared in both state and federal law-based claims, this Court concludes that *Teague* is applicable in § 2255 cases. *See Tayman*, 885 F.Supp. at 837–38.

The Supreme Court has established a framework for evaluating the retroactivity of a court decision under *Teague*. *See Caspari v. Bohlen*, 510 U.S. 383, ——, 114 S.Ct. 948, 953, 127 L.Ed.2d 236 (1994). The *Teague* rule is applied in three steps. As explained in *Caspari*:

> First, the court must ascertain the date on which the defendant's conviction and sentence became final for *Teague* purposes. Second, the court must survey the legal landscape as it then existed and determine whether a [ ] court would have felt compelled by existing precedent to conclude that the rule he seeks was required by the Constitution. Finally, even if the court determines that the defendant seeks the benefit of a new rule, the court must decide whether that rule falls within one of the two narrow exceptions to the nonretroactivity principle.

*Id.* (citations and internal quotations omitted).

█ A conviction and sentence become final when the opportunity for direct appeal has passed and when the time for filing a petition for certiorari in the Supreme Court has passed or when the petition has been denied. *See id.* Under that standard, Martinez's conviction and sentence became final when his petition for certiorari was denied by the Supreme Court on October 7, 1991.

█ This Court must next "survey the legal landscape" as of October 7, 1991. Under *Caspari*, the relevant inquiry is whether a federal court on that date would have felt compelled to conclude that Rule 43 required Martinez's presence from the beginning of the trial. The Supreme Court has also stated this rule from the perspective of the court decision that arguably establishes the "new rule." From that perspective, a "case announces a new rule if the result was not *dictated* by precedent existing at the time of the defendant's conviction became final." *Id.* (quoting *Teague*, 489 U.S. at 301, 109 S.Ct. at 1070). Stated another way, a case announces a new rule when it settles a question over which "reasonable jurists may disagree." *See Sawyer v. Smith*, 497 U.S. 227, 234, 110 S.Ct. 2822, 2827, 111 L.Ed.2d 193 (1990).

█ Under the standard developed in the *Teague–Sawyer–Caspari* line of cases, the *Crosby* decision announced a "new rule" for the purposes of *Teague*. This conclusion follows from the Supreme Court's analysis of the evolution of Rule 43 in *Crosby*. 506 U.S. at 259–61, 113 S.Ct. at 751–52. As previously mentioned, the common law practice was to require the defendant's presence at all stages of trial. *Id.* at 259, 113 S.Ct. at 751. The Supreme Court's 1912 decision in *Diaz* altered the common law to recognize that the right to be present at trial may be waived by voluntary absence. *Diaz*, 223 U.S. at 455, 32

---

1. While the *Teague* doctrine was created in a plurality opinion, it has since been accepted by a majority of the Supreme Court. *See e.g., Gilmore v. Taylor*, 508 U.S. 333, 338, 113 S.Ct. 2112, 2116, 124 L.Ed.2d 306 (1993).

S.Ct. at 254. *Diaz* is limited on its facts to apply only after trial has begun. *Id.* The *Diaz* opinion was eventually codified in Rule 43(b). *Crosby,* 506 U.S. at 259–60, 113 S.Ct. at 751–52. The Supreme Court never addressed whether a defendant could waive his right to be present at trial before the trial had begun. However, subsequent to *Diaz* lower courts were forced to address this question on constitutional and statutory—through Rule 43(b)—grounds. Both the District Court and the Court of Appeals in the *Crosby* case felt that Rule 43 permitted trial *in absentia. Id.* at 257–58, 113 S.Ct. at 750–51. The lower courts' decisions were supported by opinions in other jurisdictions as well. *See, e.g., United States v. Mera,* 921 F.2d 18 (2d Cir.1990); *United States v. Peterson,* 524 F.2d 167 (4th Cir.1975), *cert. den.,* 423 U.S. 1088, 96 S.Ct. 881, 47 L.Ed.2d 99 (1976); *Government of the Virgin Islands v. Brown,* 507 F.2d 186, 189 (3d Cir.1975); *United States v. Tortora,* 464 F.2d 1202, 1208 (2d Cir.), *cert. den. sub nom., Santoro v. United States,* 409 U.S. 1063, 93 S.Ct. 554, 34 L.Ed.2d 516 (1972).

The Fourth Circuit's decision in *Peterson* offers insight into the rationale behind the numerous decisions upholding trial *in absentia* in the face of Rule 43. In *Peterson,* the court recognized that a literal reading of Rule 43 would preclude trial *in absentia. Peterson,* 524 F.2d at 183. Nevertheless, the court held that since Rule 43 "is but a restatement of the existing law, the language upon which [defendant] relies must be construed in light of the prior law upon which the rule was founded and the evolving meanings and purposes of the common law right to presence." *Id.* (internal quotation and citation omitted). The Fourth Circuit noted the exception in *Diaz* and agreed with the Third Circuit in concluding that "no talis-

manic properties attach to the point at which the trial begins." *Id.* at 183–84 (internal quotation omitted) (citing *Brown,* 507 F.2d at 189). The court held that while *Diaz* was limited to its facts, the rationale of *Diaz* and Rule 43, in holding that a voluntary absence constitutes a waiver, reasonably applied to voluntary absences even before trial began. *Id.* at 184.

Returning to the *Teague* analysis, it is apparent that *Crosby* was not decided on a settled legal landscape. The issue addressed in *Crosby* had not previously been addressed by the Court, and lower courts had crafted a reasoned body of law interpreting the Constitution and Rule 43 as both allowing trial *in absentia* upon showing of a voluntary absence.[2] Subsequent to *Crosby,* three courts have addressed whether that decision should be applied retroactively. *Pelaez v. United States,* 27 F.3d 219 (6th Cir.1994) (applying *Crosby* retroactively); *Charles v. United States,* 896 F.Supp. 584 (N.D.W.Va.1995) (same); *United States v. Escobar,* 863 F.Supp. 131 (S.D.N.Y.1994) (not applying *Crosby* retroactively). In *Pelaez* and *Charles,* the courts relied on the historical analysis in *Crosby* to determine that *Crosby* applied an "old rule" under *Teague. Pelaez,* 27 F.3d at 222–23; *Charles,* 896 F.Supp. at 588. The Sixth Circuit in *Pelaez* stated:

> [T]he Court's final statement that "[t]he language, history, and logic of Rule 43 support a straightforward interpretation that prohibits the trial *in absentia* of a defendant who is not present at the beginning of trial is tantamount to an explicit declaration that the holding in the case was dictated by precedent.

27 F.3d at 223 (internal citation omitted); *see also Charles,* 896 F.Supp. at 588 (favorably quoting *Pelaez* ). This Court disagrees. It is apparent that the Court in *Crosby* adopted

---

**2.** The degree to which the law had settled *against* the eventual outcome in *Crosby* is evidenced by defense counsel's comments at the sentencing hearing responding to this Court's concern that Martinez understood that there had been a trial:

> And I explained to him, once the court had jurisdiction, there was court precedent to the effect that if he voluntarily removed himself from the jurisdiction the court—I explained to him that if he had been kidnapped and because of some act that he could not have prevented,

the Court would not have had—or would have granted him a new trial, if he could prove that he had been kidnapped, but he said he couldn't do that. Then I said that would be the only reason, and that it is my understanding of the law, Judge, if you voluntarily excuse yourself from the court's jurisdiction, then the Court may proceed. I may be wrong, but that's my understanding of the law.

Sentencing Proc. at 22.

a literal interpretation of Rule 43 and reaffirmed the historical, common law view that a defendant's presence was required to begin trial. *See id.* at 222; *see also United States v. Mezzanatto,* —— U.S. ——, ——, 115 S.Ct. 797, 802, 130 L.Ed.2d 697 (1995) ("In light of the specific common-law history behind Rule 43 and the express waiver provision in the Rule, we declined [in *Crosby*] to conclude that the drafters intended the Rule to go further.") (internal quotation omitted). The decision in *Crosby* may well be the most sensible interpretation of Rule 43 in light of the specificity of the opinion in *Diaz* and the precise language of Rule 43. Nevertheless, *Crosby* was an *interpretation* of the law and not mere recitation of existing precedent. Lower courts had specifically addressed the issue faced by the Court in *Crosby* and concluded that the purpose of Rule 43 and the *Diaz* decision reasonably warranted the "evolution" of the common law to allow trial *in absentia* where the defendant is voluntarily absent. *See, e.g., Peterson,* 524 F.2d at 183. The Supreme Court disagreed that Rule 43 should be subject to such evolution. The *Crosby* decision, in terms of the *Teague* analysis, shows that the lay of the legal landscape when the case at bar became final and when *Crosby* was decided was such that "reasonable jurists may disagree" as to whether Rule 43 allowed trial *in absentia. See Sawyer,* 497 U.S. at 234, 110 S.Ct. at 2827. Accordingly, *Crosby* created a "new rule" and under *Teague* may not be applied retroactively unless it falls within one of *Teague's* two narrow exceptions. *Caspari,* at ——, 114 S.Ct. at 953.

The first *Teague* exception exists for new rules "that place certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." *Caspari,* at ——, 114 S.Ct. at 956 (internal quotation omitted). As *Crosby* did not decriminalize *any* conduct, this exception does not apply. *See Gilmore,* 508 U.S. at 344, 113 S.Ct. at 2119.

The second exception is for "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Caspari,* at ——, 114 S.Ct. at 956 (internal quotation omitted).

Because this Court does not believe that Martinez suffered any constitutional violation through his trial *in absentia,* this Court concludes that *Crosby* did not establish a "watershed rule." This finding requires the Court to determine whether the Constitution, irrespective of Rule 43, required Martinez's presence at the beginning of his trial. While this question has not been addressed by the Supreme Court, *see Crosby,* 506 U.S. at 262, 113 S.Ct. at 752, this issue has been decided in the negative by the numerous courts that, prior to *Crosby,* allowed trial *in absentia. See, e.g., United States v. Mera,* 921 F.2d 18 (2d Cir.1990); *United States v. Peterson,* 524 F.2d 167 (4th Cir.1975), *cert. den.,* 423 U.S. 1088, 96 S.Ct. 881, 47 L.Ed.2d 99 (1976); *Government of the Virgin Islands v. Brown,* 507 F.2d 186, 189 (3d Cir.1975); *United States v. Tortora,* 464 F.2d 1202, 1208 (2d Cir.), *cert. den. sub nom., Santoro v. United States,* 409 U.S. 1063, 93 S.Ct. 554, 34 L.Ed.2d 516 (1972).

Unquestionably, the Sixth's Amendment's Confrontation Clause guarantees a defendant's right to be present at his own trial. *Illinois v. Allen,* 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353 (1970). It is equally unquestioned that this right is not absolute. *See id.* at 346–47, 90 S.Ct. at 1062–63 (allowing a defendant's removal from the courtroom for disorderly conduct); *Diaz,* 223 U.S. at 455, 32 S.Ct. at 253 (allowing trial when defendant is voluntarily absent after trial has begun). Recognition of the waiver of the Sixth Amendment right rests on the common sense notion that a defendant should not be able, through his own volitional acts, to disrupt and prevent his own trial. *See Diaz,* 223 U.S. at 457, 32 S.Ct. at 254. As many lower courts recognized prior to the *Crosby* decision, the rationale for the waiver of a constitutional right established in *Diaz* does not rest on the fact that the trial has started. *See, e.g., Peterson,* 524 F.2d at 183–84. Rather, as the Supreme Court noted in *Crosby,* waiver is dependent on notice of the rights available and prejudice to the government. *Crosby,* 506 U.S. at 261–62, 113 S.Ct. at 752–53. In *Crosby,* the Court felt that assurances about notice and prejudice could justify Rule 43's discriminating treatment of pretrial and midtrial flight.

*Id.* However, nothing in *Diaz, Crosby*, or the Constitution itself precludes a court from finding a pretrial waiver of the Sixth Amendment right to attend trial where the defendant was aware of his right to attend trial and where prejudice to the government can be shown. *See United States v. Brown*, 571 F.2d 980, 986 (6th Cir.1978) ("Although Rule 43(a) does have its constitutional underpinning, the right of presence stated in the Rule is more far-reaching than the right of presence protected by the Constitution.").

Assuming that notice to the defendant and prejudice to the government are the linchpins of a constitutional waiver of the Sixth Amendment right, it is evident that Martinez's trial *in absentia* was constitutional. The Supreme Court has held that express notice of the right to attend and the possibility that trial will continue in a defendant's voluntary absence are not prerequisites to that right's waiver. *Taylor v. United States*, 414 U.S. 17, 20, 94 S.Ct. 194, 196, 38 L.Ed.2d 174 (1973) (per curiam). Rather, notice may be implied from the circumstances of a case. *Id.* In the original appeal of this case, the Fourth Circuit affirmed this Court's finding that Martinez was aware of his trial date. *Martinez*, No. 89–5805, slip op. at 4–5. This conclusion was supported by the facts that (1) Martinez's trial date was set in his presence by a Magistrate Judge on February 10, 1988, (2) his attorney had expressly reminded him of the trial date so that Martinez and his mother could make travel arrangements, and (3) Martinez's initial nonappearance at the March 21 hearing was part of a ruse, as evidenced by the facts that in the days prior to the hearing, Martinez emptied and abandoned his residence and called his lawyer on the day of the hearing to say he and his mother were flying up to attend the hearing. Furthermore, Martinez was required to put up a $100,000 court appearance bond to provide an added incentive to make his court appearances. Based on this evidence, the Court has no trouble concluding that Martinez was aware of his trial date and aware that he had a right to be at his trial. His flight was not the product of nonfeasance, but rather was an attempt to escape culpability in this matter. His flight therefore constituted a voluntary waiver of his Sixth Amendment rights.

Prejudice to the government was also clearly established in this case. While in *Crosby*, the Supreme Court noted that flight before trial might, as a general matter, lessen the risk of prejudice to the government, 506 U.S. at 261, 113 S.Ct. at 752, it is clear in this case that the government would have been significantly prejudiced in both the quality of its case and the expense incurred by delaying trial. The United States Attorney's remarks to the Court well evidence this prejudice:

> [T]he government's witnesses are several years removed from the events and further delay only adds to memory problems, and plus some witnesses who now have a different life and who would like to finally get this matter behind them as this is the last of the people in this very large conspiracy—they would like to come forward as witnesses and get their testimony out and be done with this matter so that they can go on with their life.
>
> Another reason is: Witnesses have been brought in at great expense. There are three witnesses from Florida; there's a witness from Washington, D.C. here; there's a witness from Indianapolis, Indiana. The marshals have transported federal prisoners from the prison facilities at Eglin Air Force Base in Florida; they've transported prisoners from Atlanta, Georgia; they've transported a prisoner from Lexington, Kentucky; and this morning they've transported a prisoner from Petersburg, Virginia.
>
> . . . . .
>
> And lastly, there's unnecessary exposure to danger in this regard. It's not inconsiderable under the circumstances for these witnesses, especially their families, and after a trial this danger is somewhat mitigated because at that point their testimony is a matter of record.

Trial Proc. at 8–9. The statement of the United States Attorney clearly shows that delaying the trial would have compromised the government's ability to try the case, would have incurred significant and needless expense, and would have placed significant

personal burdens on the witnesses for the trial. Upon this evidence, prejudice to the government is shown.

In summary, the facts in this case reveal that Martinez was aware of his trial date and his right to be present. Any delay in the trial caused by Martinez's voluntary absence would have been prejudicial to the government. Therefore, Martinez's flight before trial was a constitutionally permitted waiver of his Sixth Amendment right to confrontation. In the absence of a constitutional violation, the violation of Rule 43 in this case did not violate any "watershed principles" of criminal procedure. *Caspari*, at ——, 114 S.Ct. at 956. Therefore, the second exception to the *Teague* rule is not applicable. Because this case falls under neither of the two exceptions to *Teague*, the Court is justified in concluding that *Crosby* creates a "new rule" of criminal procedure that may not be applied in this collateral attack on a final sentence.

#### d. Collateral Attack if Crosby Were Applicable

The Court's analysis of whether *Crosby* established a "watershed principle" of criminal procedure sets the groundwork for determining whether relief would be appropriate if *Crosby* were applied retroactively. The Court wants to emphasize that under no interpretation of *Teague* would Martinez be entitled to relief. That is to say, even if *Crosby* were applied retroactively, Martinez would still not be entitled to relief.

As set out above, the Court believes that Martinez suffered no constitutional violation. However, nonconstitutional claims may be brought under § 2255. *Davis v. United States*, 417 U.S. 333, 345, 94 S.Ct. 2298, 2304, 41 L.Ed.2d 109 (1974). Nevertheless, such claims must assert either "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure" *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962); *See Davis*, 417 U.S. at 346, 94 S.Ct. at 2305; *United States v. Timmreck*, 441 U.S. 780, 784, 99 S.Ct. 2085, 2087, 60 L.Ed.2d 634 (1979). For the reasons set forth in the *Teague* "watershed principle" exception analysis, the Court finds no "fundamental defect" in this case. The record in this case shows that Martinez was convicted by a jury that was given substantial evidence of Martinez's leadership role in a cocaine distribution conspiracy. There is no indication that Martinez's voluntary absence from trial substantially hindered his defense so to lead to a miscarriage of justice. Under the *Hill* standard then, even applying *Crosby* retroactively, Martinez is entitled to no relief. *See Escobar*, 863 F.Supp. at 132.

### III. CONCLUSION

Martinez's Motion under § 2255 is **DENIED**. Petitioner is **ADVISED** that he may appeal *in forma pauperis* from this Final Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia, 23510. Said written notice must be received by the Clerk within thirty (30) days of the date of this Order.

The Clerk is **REQUESTED** to send a copy of this Final Order to Petitioner and to the United States Attorney.

**IT IS SO ORDERED.**